THE UNITED STATES, APPELLANTS, *v.* DOMINGO ACOSTA, APPELLEE.

The certificate of the secretary of the Spanish governor of Florida is *prima facie* evidence of the existence of a grant of land.

The Spanish governor had authority to issue such a grant.

In the case of a grant made before the 24th of January, 1818, it is valid, although the survey was not made until after that day, provided the survey was made before the exchange of flags.

It is not a good objection to such a grant that the metes and bounds were not set forth.

THE facts in this case are fully set forth in the opinion of the court.

It was submitted by Mr. Legaré, the attorney-general, without argument, on the usual objections assigned, *pro forma,* for error.

Mr. Justice CATRON delivered the opinion of the court.

This is an appeal from the decree of the Superior Court of East Florida, confirming eight thousand acres of land to Domingo Acosta, under the acts of Congress for the adjustment of land-claims in Florida.

The claim is founded on an alleged petition of Acosta, dated May 2, 1816, and a decree of Governor Coppinger thereon, dated the 20th day of the same month and year. The petition (record 8) sets forth: That by the certificates which he presented, signed by the commandants of Fernandina, who had governed it successively since 1808, his excellency would be informed that he had been a permanent resident of the said town, engaged all the while in commerce, and had served (in all that had offered itself) the wishes of the government for the good of the province; and that he had been particularly prompt with his person, his funds, and his influence, for the defence, the support, and the advancement of the town; and that he had at no time had any stipend, recompense, or remuneration, of his expenses, supplies, and losses, and had refrained from importuning the government with solicitations. He therefore prayed for a grant in property, of eight thousand acres; but as he was ignorant of the lands that were vacant, and desirous to avoid interference and dissensions with any person, he further prayed his excellency would be

pleased to grant them at the places where the surveyor-general might survey them as vacant lands!

The decree (record 8) states, that "in virtue of the certificates which this party presents, and it being the will of the sovereign that the merits of his subjects should be rewarded, the lands solicited in this instance are granted, with special charge to the surveyor-general to survey them to him without injury to third persons."

The originals of the petition and decree were not produced in evidence, neither are they to be found in the archives at St. Augustine. A certified copy, dated 24th June, 1816, under the hand of Thomas de Aguilar, secretary of the government, stated to be faithfully drawn from the original in his office, was alone offered, and was objected to on the part of the appellants.

The appellee also offered the following plats and certificates of survey, purporting to be made by George J. F. Clarke, surveyor-general of the province:

No. 1. Dated 12th January, 1818, for one thousand acres of land, on Bowlegs' old plantation, and situated northwardly and contiguous to the same Bowlegs' prairie, westward of Payneston.

No. 2. Dated 15th January, 1818, for one thousand five hundred acres of land, in the hammock called Jobbin's hammock, southwestwardly of the road called Ray's trail, leading from the natural bridge of the Santa Fe, to the point of Alachua called Hogtown.

No. 3. Dated 14th February, 1818, for one thousand five hundred acres of land, northward of Dunn's creek, running from Dunn's lake to the river St. John.

No. 4. Dated 20th January, 1820, for four thousand acres of land, on the west side of Indian river, and at a place called Flounder creek.

After hearing testimony as to the manner in which muniments of title were kept in the archives at St. Augustine, the court made a decree confirming the four several tracts of land to the claimant, from which decree the present appeal is taken.

On the part of the United States, it was contended that the said decree ought to be reversed, on the following grounds:

1. That there is not sufficient evidence to show that Governor Coppinger ever made the alleged concession or grant.

2. That if Governor Coppinger made such a grant, it was made without authority.

3. That there is no description whatever in the said pretended grant, of the lands alleged to be granted, and no valid survey could be made so as to sever any lands from the public domain.

4. That there is no evidence of the surveys.

The foregoing statement, offered on part of the United States, presents the facts of the case; and the objections to the decree below.

In answer to the first, that there is not sufficient evidence the grant was made, we refer to the case of Wiggins, (14 Peters,) which determines that the official certificates of the secretary Aguilar was *prima facie* proof of the existence of the original grant at the date when the copy was made; and of its contents. In this case, Alveraz proves the certificate of the secretary genuine, and that he was in office at the date of the certificate. It was in proof that no original could be found in the proper office where it should be on file. This was sufficient to let in a copy; and there being no proof to contradict, or impair the force of Aguilar's certificate, the court below properly held, that the grant had been made by Governor Coppinger.

To the second objection, it is sufficient to say—that the governor, as the king's deputy, was the sole judge of the merits on which the claim is founded, and had undoubted power to reward the merits of the grantee; so this court has held in many cases.

3. Although there is no description of any place where the land granted shall be located, in the governor's decree; still it was binding so far as it went. The surveyor-general was ordered to survey the lands solicited, on places vacant, and without injury to third persons. The acts of this subordinate officer came in aid of the decree; he had the authority conferred to sever the land granted from the public domain: had he done so before the 24th of January, 1818, then there could be no doubt the grantee took title to the particular lands; because, up to this date, all grants made by the King of Spain, in whatever form, are recognised as valid by the article of the treaty. The difficulty in this case is, that two of the surveys were made after the 24th of January, 1818: and, did the grant take effect from the date of the surveys, then, by the stipulations of the 8th article,

it would be void. This question was first presented in Sibbald's case, 10 Peters, 321. It was thought by this court, that the 8th article of the treaty operated on grants made by the governor after the 24th of January, 1818, but not on the subordinate acts of the surveyor in giving effect to the grant; and that surveys could be made at any time before the change of flags between this government and that of Spain. Still, had that officer failed to make the surveys, the grant would not be binding on this government. We followed the case of Sibbald in that of Clarke *v.* Atkinson, at the last term, 16 Peters, 231. This construction was given to the 8th article of the treaty, in a spirit of liberality to this description of claimants, who could not be held justly responsible for the delays of the surveyor-general; and because the incipient claim, by the governor's decree, was not cut off by the treaty. The surveyor-general having executed the governor's decree, we are of opinion that the surveys made after the 24th of January, 1818, as well as those made before that date, are valid. That there are several surveys is no objection to their validity; the decree in this case obviously so contemplated.

4. It is objected, that no sufficient evidence is furnished by the record that the surveys were made. The cause was first submitted to the court below, in 1834; then the two surveys last made were objected to and admitted by the court. The judge continued the cause on his own motion for further proofs, and it stood over on continuances until 1840, when the four surveys were read without objection. We think the proofs authorized the decree, and order that it be affirmed.

### ORDER.

This cause came on to be heard on the transcript of the record from the Superior Court for the District of East Florida, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Superior Court in this cause be and the same is hereby affirmed, in all respects.