OAK FOREST, INC., et al., Plaintiffs,

and

Peoples Federal Savings and Loan Association of South Carolina, Third–Party Plaintiff,

v.

The UNITED STATES, Defendant,

and

Daniel L. Patrick, et al., Third–Party Defendants.

No. 90–102L.

United States Court of Claims.

April 26, 1991.

Lawrence C. Melton, Washington, D.C., for plaintiff Oak Forest, Inc. N. David DuRant, Surfside Beach, S.C., of counsel, for Oak Forest, Inc. Victoria T. Vaught, Conway, S.C., for third-party plaintiff Peoples Federal Sav. and Loan Ass'n of S.C.

Stuart B. Schoenburg, Washington, D.C., for defendant. Susan Taylor Wall, Charleston, S.C., for third-party defendant Daniel L. Patrick, et al. Charles J. Baker, III, of counsel, for Daniel L. Patrick, et al.

## OPINION

BRUGGINK, Judge.

This is an action for the taking of real property. Individual plaintiffs ("Wards") and Oak Forest Inc. are present or former owners of land in a subdivision in Myrtle Beach, South Carolina known as Oak Forest. Third-party plaintiff, Peoples Federal Savings and Loan Association of South Carolina ("Peoples"), holds mortgages on parcels of land in Oak Forest. Plaintiffs claim that the United States, acting

through Myrtle Beach Air Force Base, has taken the use and value of the subdivision through a series of actions, beginning with the erroneous assertion of title to a strip of land along the border between the base and Oak Forest. The United States has counterclaimed against Oak Forest, Inc. and the Wards, claiming that negligence by plaintiffs resulted in damage to the air base.

The United States has moved to dismiss, alleging that plaintiffs' remedies are limited to those available in a quiet title proceeding, and that this court thus does not have jurisdiction to entertain a takings claim arising out of the same facts. In the alternative, the United States moves to suspend proceedings in this action while a determination is reached in a quiet title proceeding currently pending in district court in South Carolina. That proceeding, brought pursuant to the Quiet Title Act, 28 U.S.C. § 2409a (1988), presently does not involve the plaintiffs or third-party plaintiff to this proceeding.

The issue raised by the motion to dismiss is whether, when the facts alleged to constitute a taking also have the effect of clouding title, a Tucker Act[1] compensation remedy is foreclosed. After extensive briefing and oral argument, the court concludes, for the following reasons, that it has jurisdiction over the takings claim, but that the action should be suspended.

## BACKGROUND

The facts alleged in the complaint will be briefly summarized. Oak Forest, Inc. purchased the land at issue in 1987 for the purpose of subdividing and developing it into a single-family residential subdivision. The Wards are shareholders or officers in the corporation. They purchased lots within Oak Forest for the purpose of resale. The subdivision either abuts the air base or is separated from it by a sand road that has been in existence for several years. It is known as Hucks Road.

Hucks Road intersects with U.S. Highway 17, a major thoroughfare. In developing the subdivision, Oak Forest, Inc. paved approximately 400 feet of Hucks Road as it turns south off Highway 17. From that point, the paved road veers west and then south again. The entire paved road, including the portion superimposed on Hucks Road, is known as Forest Boulevard.

A survey of the vicinity was recorded in February 1987. It is referred to as the Watson survey. It reflects that the extent of air base ownership was the base or southeast side of Hucks Road. The base itself commissioned two later surveys, known as Sur–Tech I and Sur–Tech II. In the first of these surveys, government ownership is shown to extend to approximately the Oak Forest or northwest side of Hucks Road. A plat reflecting this survey was filed on March 16, 1987 in the Horry County public records office. In their complaint, plaintiffs allege that this plat "showed a substantial encroachment ... on the property owned by the Plaintiffs, as well as the access road from U.S. Highway 17 to the property owned by the Plaintiffs. The filing of such plat created a cloud on Plaintiff's title." On October 5, 1989, a revised survey, Sur–Tech II, was filed by the Government which had the effect of moving the purported boundary closer to the base.

On November 7, 1988, James Ellis, Chief of the Real Estate Division at the base, wrote a letter to Oak Forest, Inc. asserting in part the following:

Please consider this notice that your development, Oak Forest Subdivision, substantially encroaches upon property of the United States at Myrtle Beach Air Force Base.

This encroachment includes a portion of the entrance road into the subdivision....

You should consider this notice as a demand that you cease and desist the sale of Government property and trespassing upon Government property. All encroachments must stop and Government land must be immediately vacated.

Similar letters were sent to other land owners, including one written by Ellis on

---

1. 28 U.S.C. § 1491 (1988).

November 21, 1988 to Carl and William Ward, excerpted below:

> Although the record reflects that the lot(s) you own are not on Government property, the access road off Highway 17 bypass that leads into the Oak Forest Subdivision is substantially encroaching upon Government property....
>
> We will notify you in advance of the date that the current access road will be closed to traffic.

In subsequent submissions, plaintiffs allege that representatives of the Government publicly announced the asserted encroachment and that the claim by the United States received wide publicity. They further assert that the net effect of the Government's actions was to cloud title to those lots immediately adjoining Hucks Road and to destroy the saleability of lots in the entire subdivision because of a loss of access by the only road into the subdivision. Since filing this action, the interests of some plaintiffs have apparently been foreclosed.

During briefing on the motion and in oral argument, it became clearer to the court that despite the assertions in the complaint that the United States erroneously claimed "an interest in Plaintiffs' real property," plaintiffs' primary assertion will be that Hucks Road was dedicated to public use, and that even if plaintiffs had no fee interest in it, the Government had no right to close it and thereby destroy access to the subdivision.

The pendency of two other proceedings bear directly on this action. On November 15, 1989, United Carolina Bank, holder of mortgages secured by lots within Oak Forest, commenced an action in the United States District Court of South Carolina to quiet title to lots 20, 29, and 43. On April 27, 1990, Chicago Title Insurance Company, which carries title insurance on land within the subdivision, brought an action in state court against Horry County, seeking to have a portion of Hucks Road declared closed. The petition relates to that portion of the road which Oak Forest, Inc. purported to subdivide and convey to lot owners. In addition, the petition asks that the court

"determine in whom the title thereto shall be vested." The United States intervened in the road closing action, and it was removed to the district court and consolidated with the quiet title proceeding.

The plaintiffs are not presently parties to either the road closing or quiet title actions, although a consent order was issued in these proceedings on April 4, 1991 directing that the Government would use its best efforts to effect joinder of "all persons or entities whose property interests are affected by the determination of all property interests to the [property at issue]."

## DISCUSSION

■ Defendant's motions depend on two premises. The first is that the Quiet Title Act repealed any Tucker Act remedy which might arise out of facts which could also give rise to a quiet title proceeding. The second is that a claim that a Government-caused cloud on title resulted in a taking is in fact a suit to quiet title. The court concludes that the first premise is insupportable, but that the second is correct in part, and thus the present action should be suspended.

The taxonomy of the cause of action, if any, spawned by the present set of facts has absorbed substantial effort by the court and parties. It is plain enough that if the suit were pressed against a private party, the remedy would probably be a tort action for slander of title. Restatement (Second) of Torts §§ 624, 629, 632 (1977). The United States has not waived sovereign immunity for such a claim, however. See 28 U.S.C. § 2680(h) (1988); *United States v. Drinkwater*, 434 F.Supp. 457, 460 (E.D.Va.1977).

The Government contends that the appropriate remedy, if any, is for plaintiffs to participate in the quiet title proceeding. The shortcoming of that course of action for those plaintiffs who no longer own a property interest in the disputed land is obvious. Absent a pending taking action in this court, the district court proceeding would not seem to be able to afford any relevant relief to them. It would be of merely academic interest. Without the

prospect of a viable claim in this court, such plaintiffs would not appear to have an interest sufficient to give standing. Even as to those plaintiffs who still assert a present interest in the disputed land, the quiet title action can do no more than determine title. If there has been a taking in the constitutional sense in the past, the quiet title proceeding would not provide a source of compensation, unless the Government chooses to buy the disputed land if it loses in the quiet title proceeding. Here, the Government has announced it does not wish to buy any land the district court determines it does not own.

Plaintiffs counter that because this court has exclusive jurisdiction over Tucker Act claims in excess of $10,000, and since they assert that actions by the Government had the effect of destroying the value of their property interests, the complaint cannot be dismissed on jurisdictional grounds. The Government replies that, even if our predecessor court, the Court of Claims, exercised jurisdiction in taking claims in which title was disputed as against the Government,[2] the Quiet Title Act dictates that the exclusive remedy when title is disputed is a determination of ownership by the district court, and thus the right to possession. An independent Fifth Amendment claim for compensation is extinguished, it contends.

As part of a takings claim, the plaintiff must demonstrate ownership of a compensable property interest at the time of the asserted taking. *See Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 473–74, 93 S.Ct. 791, 794, 35 L.Ed.2d 1 (1973); *Armstrong v. United States,* 364 U.S. 40, 44–46, 80 S.Ct. 1563, 1566–68, 4 L.Ed.2d 1554 (1960); *Cavin v. United States,* 19 Cl.Ct. 190, 197 n. 4 (1989); *Sharkey v. United States,* 17 Cl.Ct. 643, 647 (1989). Like any other part of the plaintiff's case, this element can be challenged. When ownership has been disputed, the court must first determine that the plaintiff has a legally cognizable interest. *See Mundy v. United States,* 22

Cl.Ct. 33 (1990); *Sharkey,* 17 Cl.Ct. at 647; *Yaist v. United States,* 17 Cl.Ct. 246, 254–56 (1989); *Houser v. United States,* 12 Cl.Ct. 454, 460 (1987).

The Court of Claims held that it was empowered to make determinations of disputed title even when the Government asserted ownership in itself. In *Bourgeois v. United States,* 212 Ct.Cl. 32, 36 n. 1, 545 F.2d 727, 729 n. 1 (1976), the court specifically held that the fact that there "is a quiet title issue involved in determining entitlement to just compensation *vel non*" did not oust the court of jurisdiction. The court distinguished a suit for possession of the property, which could be brought under section 2409a, "But this is not a suit for possession. It is a *just compensation action* and thereby within the historical jurisdiction of the court." *Id.* (emphasis in original). The facts alleged in *Bourgeois* are very similar to those alleged here. In that case, defendant "posted" an island and claimed ownership through a competing chain of title, contrary to plaintiff's assertions.

To identical effect is *Yaist v. United States,* 228 Ct.Cl. 281, 656 F.2d 616 (1981), where the court held, "The Quiet Title Act ... does not apply to or affect 'actions which may or could have been brought under' section 1491." 228 Ct.Cl. at 285, 656 F.2d at 620, quoting 28 U.S.C. § 2409a. In *Yaist,* both plaintiff and the Government claimed title to a parcel of land in the Everglades. The court held that an allegation that the Government had filed its deed to the property and had made a written assertion of ownership by letter was sufficient to state a cause of action for a taking, despite the availability of a quiet title proceeding. *Bourgeois* and *Yaist* unequivocally hold "that if a suit involving a dispute over title seeks just compensation for the government's taking (as distinguished from return of the property), this court has jurisdiction. [Citation omitted.] This is true even if the same suit could have been brought, and the same relief obtained, in the district court under the Quiet Title

2. *Gila Gin Co. v. United States,* 231 Ct.Cl. 1001 (1982); *Yaist v. United States,* 228 Ct.Cl. 281, 656

F.2d 616 (1981); *Bourgeois v. United States,* 212 Ct.Cl. 32, 545 F.2d 727 (1976).

Act." *Gila Gin v. United States*, 231 Cl. Ct. 1001, 1003 (1982).

In *Gila Gin Co.*, 231 Ct.Cl. at 1001, the court reaffirmed that "the jurisdiction of the district courts over quiet title actions under 28 U.S.C. § 2409a does not preclude us from determining actions for just compensation even though the existence of a taking *vel non* depends upon whether the government had title to the property it allegedly took." *Id.* at 1002. To like effect is *Carlson v. United States*, 208 Ct.Cl. 1022, 1023 (1976) ("[T]he Supreme Court has recognized, albeit in a footnote, the Court of Claims as an appropriate tribunal where plaintiffs could try title by seeking just compensation for the taking of their land by the United States.").

These rulings are based not only on the traditional jurisdiction of the Court of Claims over takings claims, but on the specific language in the Quiet Title Act disavowing any intent to affect such claims: "This section does not apply to ... actions which may be or could have been brought under section[ ] ... 1491 ... of this title ..." 28 U.S.C. § 2409a. The decisions also point to *Malone v. Bowdoin*, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). *Malone* was an action in ejectment against the Government. The issue was whether the United States had good title to the property. The Court concluded that an ejectment action did not lie against the United States, but that "there has been at all relevant times a tribunal where the respondents could seek just compensation for the taking of their land by the United States. That tribunal is the Court of Claims." 369 U.S. at 647 n. 8, 82 S.Ct. at 983 n. 8.

Defendant contends that the intent of this language in the statute, as well as the holdings in *Malone* and in the Court of Claims precedent, has been thrown into doubt by the subsequent decision of the Court in *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). That was an action brought by South Dakota, seeking injunctive and declaratory relief with respect to ownership of the bed of the Missouri River. The original complaint did not mention the Quiet Title Act, although

the district court required the state to amend the complaint to plead the act. There were two issues in that case. The first was whether the state could obtain declaratory and injunctive relief establishing title to the riverbed without resort to the Quiet Title Act. The second was whether, assuming the Quiet Title Act was the exclusive remedy, the twelve-year limitations period in the act applied to the state. The Court held that the act was the exclusive remedy, and that the limitations period did apply: "We hold that Congress intended the [Quiet Title Act] to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." 461 U.S. at 286, 103 S.Ct. at 1819.

From this holding, the Government in the present action concludes that a Tucker Act remedy no longer exists when title is in dispute. Constitutional protections are not so easily undercut. The holding of *Block* has to be read in context. The remedy the state sought in that action was a declaration of ownership—the precise remedy afforded by the Quiet Title Act. It was apparent to the Court that permitting a declaratory action to proceed under 28 U.S.C. § 2201 would duplicate the Quiet Title Act remedy and thereby avoid the twelve-year limitations period. The Court was focusing on the relief sought.

Moreover, the court in *Block* specifically relied on the language in *Malone* referred to above which recognized a separate type of remedy under the Tucker Act:

Also, since passage of the Tucker Act in 1887, those claimants willing to settle for monetary damages rather than title to the disputed land could sue in the Court of Claims and attempt to make out a constitutional claim for just compensation. *See* 28 U.S.C. § 1491; *Malone v. Bowdoin*, 369 U.S. 643, 647 n. 8 [82 S.Ct. 980, 983 n. 8, 8 L.Ed.2d 168] (1962).

*Block*, 461 U.S. at 280–81, 103 S.Ct. at 1816. It is plain from this reference that the Court views a takings claim under the Tucker Act and a proceeding to quiet title as fundamentally different in purpose and therefore compatible.

This is confirmed by the subsequent decision in *United States v. Mottaz*, 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986). That was an action brought under the Tucker Act and the General Allotment Act of 1887 [3] by a Chippewa Indian. Plaintiff claimed that a purported sale of her allotment interest by the United States was void, and that the land should either be returned to her, or she should be paid compensation for a taking. Relying on *Block*, the Court held that her claim could only be brought under the Quiet Title Act. It distinguished a Tucker Act claim in the following way:

> A claim for monetary damages in that amount would involve a concession that title had passed to the United States Forest Service in 1954 and that the sole issue was whether respondent was fairly compensated for the taking of her interests in the allotments. Rather, respondent demands damages in the amount of the *current* fair market value of her interests. What respondent seeks is a declaration that she alone possesses valid title ... and that the title asserted by the United States is defective, and an order requiring the United States to pay her the value of her interest today in order properly to transfer title.
>
> . . . .
>
> Rather than seeking a declaration that they owned the property at issue, such claimants would concede that the Government possessed title and then would seek compensation for the Government's having taken the property from them.
>
> . . . .
>
> A Tucker Act-based lands suit would seek damages equal to just compensation for an already completed taking of the claimant's land.... Rather, she claims she still owns her interests in the allotment, and she seeks to force the Government to buy those interests. She claims, in essence, that no legally cognizable taking has yet occurred.

476 U.S. at 842, 849, 850, 106 S.Ct. at 2229–30, 2233, 2234. In drawing this dis-

tinction, the Court squarely answers defendant's primary argument in the present action: "[W]e cannot conclude that Tucker-based suits, like the officer's suit at issue in *Block*, are clearly precluded by the passage of the Quiet Title Act." 476 U.S. at 850, 106 S.Ct. at 2233. In fact, the Court specifically addresses the possibility that a claim would arise in which both Quiet Title Act and Tucker Act claims would be present: "[W]e express no opinion on the question whether ... an appeal in a case raising both Tucker Act and Quiet Title Act claims would have to be bifurcated...." 476 U.S. at 849 n. 11, 106 S.Ct. at 2233 n. 11.

This court holds, therefore, that the mere fact that title must be determined as part of this proceeding does not oust the court of jurisdiction, assuming it otherwise exists. The result of *Block* and *Mottaz*, however, is that in order to have a viable Tucker Act claim, the plaintiff must seek compensation, and not a declaration of present title.

 The question therefore becomes, what do the plaintiffs in this action seek? The plaintiffs have carefully drawn their complaint, apparently in recognition of the above-quoted language in *Mottaz*. They concede that the Government took whatever interest they had in the disputed land on November 15, 1988. Unlike the plaintiffs in *Block* and *Mottaz*, they do not purport to seek a declaration of present ownership in the property. While that bit of artful dodging might meet the literal words of *Mottaz*, it quickly breaks down on closer scrutiny. Clearly, plaintiffs cannot recover for a taking as of November 15, 1988 unless they establish some property interest, either in the disputed strip between the base and the subdivision or in the access road. Equally clearly, if the Sur–Tech surveys were in error, then the simple act of filing them in the Horry County Courthouse did not transfer legal title. The court is forced to conclude, therefore, that the assertion underlying the pleadings simply cannot enter the calculus. If there was a taking, it did not involve the legal trans-

---

**3.** 24 Stat. 388, as amended, 25 U.S.C. § 331 *et seq.* (1988).

fer of title. The United States cannot take legal title to property except through a condemnation proceeding or some other regular process. Assuming plaintiffs owned title prior to the Sur–Tech I survey, regardless of how erroneous that survey was, it could not, by itself, have worked a transfer of title. With respect to legal ownership, the survey constituted no more than a cloud on title.[4]

It is also clear that the plaintiffs cannot force the defendant to permanently take the property. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482 U.S. 304, 317, 107 S.Ct. 2378, 2387, 96 L.Ed.2d 250 (1987). If the plaintiffs are to remain in this court, therefore, their claims must be compatible with a possible finding that they continue to own some interest in the disputed land, and that the Government does not want to take title to that interest.

It is possible, of course, for a taking to occur without any previous transfer of title. A taking within the meaning of the Fifth Amendment occurs when the rightful property, contract or regulatory powers of the Government are employed to control rights or property which have not been purchased. *Golder v. United States*, 15 Cl.Ct. 513, 518 (1988). If the United States destroyed plaintiffs' interest in the use and enjoyment of the property, then what was taken is not title but the value of that interest. In the event of such a conclusion, it would be up to the Government to prevent future claims by requesting that legal transfer of the interest taken be made part of the remedy. But whether the Government wants title or not, it must pay for whatever interest it did take.

In light of the alleged facts and the case precedent, there are two possible scenarios in which the facts recited would permit the court to find a taking. The first relates to the disputed land itself. If the Government has wrongfully clouded title to that strip of land, and if the plaintiffs have been deprived[5] of some possessory interest in it, then at a minimum they are entitled to assert a temporary taking. *See First English Evangelical Lutheran Church*, 482 U.S. at 318, 107 S.Ct. at 2387. Their recovery would not include, however, the type of consequential damages sought in the complaint. Consequential damages (loss of income, loss of profits, etc.) are not recoverable in the Tucker Act remedy. Relief for a temporary taking is the value of the use of the property. *See First English Lutheran Church*, 482 U.S. at 319, 107 S.Ct. at 2388; *Roman v. Velarde*, 428 F.2d 129, 133 (1st Cir.1970); *United States v. Herrero*, 416 F.2d 945 (9th Cir.1969).

There is a second type of claim presented which can only be addressed in a Tucker Act context. Plaintiffs assert that they either owned the land on which Hucks Road lay, or that the road was dedicated to public use and therefore available to them to access the subdivision. They contend that the effect of the Sur–Tech I survey and succeeding letters was to oust them of access to the entire subdivision. Under this theory, the only land to which plaintiffs must establish a possessory or use interest is the first 400 feet of Hucks Road. Based on the court's reading of the Sur–Tech II survey, the Government no longer contends that it owns that portion of Hucks Road. If plaintiffs' ownership of the road, or its right to use the road is disputed, therefore, the dispute cannot require reso-

---

4. The mere filing of a deed or plat does not constitute a taking, since there is no direct interference with land. *See Hilkovsky v. United States*, 205 Ct.Cl. 460, 464, 504 F.2d 1112 (1974); *Gerlach Live Stock v. United States*, 111 Ct.Cl. 1, 85–86, 76 F.Supp. 87, 97 (1948).

5. As noted above, see note 4 *supra*, mere filing of a deed or a survey would not be a taking. There must be some further acts interfering with the use and enjoyment of the property interest. In *Bourgeois* and *Yaist*, however, the Court of Claims found that posting the land and writing demand letters to the plaintiffs stated a cause of action. *Yaist*, 228 Ct.Cl. at 286, 287 & n. 4 ("It is the interference with the title to the land through a legally authorized assertion of ownership that constitutes the taking." "The current claim of present ownership ... is what brings the Government's conduct in this case within our jurisdiction."); *Bourgeois*, 212 Ct.Cl. at 42; Without deciding that issue for this action, it is enough to conclude that the court has jurisdiction to hear the claim.

lution through the Quiet Title Act, since the United States is not a claimant.

Even if the Government asserted an ownership interest in the portion of Hucks Road that is now paved, however, the plaintiffs' takings claim goes far beyond the disputed land. Plaintiffs assert that the filing of an erroneous survey, along with the Government's efforts to have plaintiffs quit their use of the road, destroyed the value of the entire subdivision, not just the overlapping portions of the various surveys. The Government's contention that the only remedy with respect to all the land is in a quiet title proceeding, even that land indisputably owned by plaintiffs, is without support.

 The court is then left with an action that has viable claims under the Tucker Act, but also necessarily involves determination of ownership interests as between the Government and plaintiffs as of the date of the alleged taking in November 1988. The title aspects of this proceeding are largely duplicated in the district court proceedings. The plaintiffs in the road closing action seek to have the unpaved portions of Hucks Road revert to private ownership, as yet unknown. The third-party plaintiff concedes that even though the plaintiffs "in the instant action are not named parties to the road closing action . . . the determination of [that] action could be binding on Plaintiffs. . . ." Supplemental Brief of February 8, 1991, p. 18. The issues in the quiet title proceeding of necessity will involve determination of title to Hucks Road throughout the period at issue. In both proceedings, the court has directed the defendant to bring in additional interested parties. Defendant represents that that will include the plaintiffs here.

Under these circumstances it would be a substantial waste of judicial resources and a burden on the defendant to litigate title to the same parcel of land in two fora. Even though the purposes for litigating title would be somewhat different—the district court ultimately would be interested solely in present title—the relevant findings of the district court in both actions would appear to collaterally estop the parties here on the title aspects of this proceeding. There is also the possibility of inconsistent results if this action proceeds. Finally, Congress has clearly stated its instructions that the remedy of a declaration of present title as against the United States should be litigated in the district court. Since that determination will in all likelihood fix ownership in the recent past, the court is of the view that this action should be suspended until the district court issues its rulings in the quiet title and road closing actions.

## CONCLUSION

Defendant's motion to dismiss for lack of jurisdiction is denied because the complaint seeks a remedy other than that afforded by the Quiet Title Act. Proceedings in this action are suspended, however, until further notice of the court. Defendant is directed to notify the court on or before May 20, 1991 on the status of joinder of parties in the district court proceedings.