**James DWEN, Laurie Morley and Robert Vickers as heirs of Domingo Pedro Acosta, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 03–2753L.

United States Court of Federal Claims.

Sept. 14, 2004.

their property.

William H. Beaver, II, Orlando, Florida, attorney of record for plaintiff.

Elsie B. Kappler, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Thomas L. Sansonetti, for defendant.

## OPINION

FUTEY, Judge.

This case comes before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. The parties frame the questions presented in the following manner. Defendant maintains that plaintiffs are belatedly seeking just compensation for an alleged taking. Defendant contends that plaintiffs' claim is barred by the court's six-year statute of limitations found in 28 U.S.C. § 2501. Defendant also asserts that the court is without jurisdiction to issue a declaratory judgment in the context of this case. Plaintiffs, on the other hand, refute defendant's assertion that their action is an "original" takings claim. Rather, plaintiffs contend that they are seeking enforcement of an 1843 United States Supreme Court (Supreme Court) order. Plaintiffs aver that statutes of limitations are inapplicable to consent decrees or court orders. Plaintiffs also assert that there is no time limitation under 28 U.S.C. § 2415(c) to establish "title to, or right of possession of, real ... property."

During oral argument, however, plaintiffs deviated from the causes of action in their complaint and sought to advance new legal theories to place their claim within the court's jurisdiction.[1] The court was receptive to plaintiffs' position and, per plaintiffs' suggestion, accorded plaintiffs an opportunity to submit another brief on the matter. Plaintiffs' argument, as gleaned from their brief, now invokes three additional sections of the Tucker Act. Plaintiffs maintain that their cause of action is founded on "an Act of Congress." Plaintiffs also contend that the court possesses jurisdiction under either an

---

1. Transcript of Oral Argument (Tr.) at 26–27, 30.

express or an implied contract theory. In particular, plaintiffs assert that the "Constitution is a solemn contract ... [and] the United States breached this 'Constitutional Contract' by not following the Supreme Court's directive promulgated pursuant to the Acosta Order." [2] Plaintiffs also aver that the "Acosta Order clearly constitutes an implied in fact contract between the parties." [3]

### Factual Background

Plaintiffs, the heirs of Domingo Pedro Acosta, assert that they are the rightful owners of approximately 8,000 acres of land located in the vicinity of Jacksonville, Florida. Mr. Acosta, at some point prior to May 2, 1816, had been engaged by, and performed services for, the Spanish crown. [4] Because Mr. Acosta had not received compensation for his services, he petitioned the Spanish Governor of Florida on May 2, 1816, for a grant of land. [5] On May 20, 1816, Mr. Acosta's petition was granted and "the Surveyor General [was ordered] to survey and separate from the public domain the [property in question] with full ownership thereof to be vested in Mr. Acosta." [6]

Pursuant to the Treaty of 1819, between the United States and Spain, "land grants from the King of Spain and Florida would be treated by the United States with the same deference and full respect as would be acknowledged by the King of Spain." [7] The United States, however, took issue with Mr. Acosta's ownership of the property. [8] To resolve the matter, the parties resorted to judicial intervention, which culminated with a holding from the Supreme Court that Mr. Acosta possessed valid title to the property in question pursuant to the Treaty of 1819. See *United States v. Acosta*, 42 U.S. 24, 1 How. 24, 11 L.Ed. 33 (1843). [9] At an unspecified time after the Supreme Court issued its

opinion in 1843, according to plaintiffs, "the United States prevented and precluded Mr. Acosta from taking possession of the Property and subsequently took the Property without just compensation to Mr. Acosta." [10]

The facts recited by plaintiffs do not go any further. Plaintiffs' complaint is limited to actions which were taken in the mid-nineteenth century, and the record is devoid of reference to events which transpired over the century and a half that followed. The silence was broken, however, on November 26, 2003, the date plaintiffs filed suit in this court. Defendant, the United States, filed a motion to dismiss for lack of subject matter jurisdiction on February 25, 2004. After being granted an extension of time, plaintiffs filed their opposition on April 22, 2004. Defendant replied on March 6, 2004. Pursuant to plaintiffs' request, the court held oral argument on July 13, 2004. Plaintiffs filed a post-argument brief on August 5, 2004, and defendant responded on August 26, 2004. Plaintiffs also submitted a reply brief, which was filed by leave of the undersigned judge on September 3, 2004.

### Discussion

In ruling on a motion to dismiss for lack of jurisdiction under RCFC 12(b)(1), the court accepts as true the complaint's undisputed factual allegations and construes the facts in the light most favorable to plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); see also *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *Farmers Grain Co. of Esmond v. United States*, 29 Fed.Cl. 684, 686 (1993). Plaintiffs must make only a *prima facie* showing of jurisdictional facts through the submitted material in order to defeat a motion to dismiss. *Raymark Indus., Inc. v. United States*, 15 Cl.Ct. 334, 338 (1988) (cit-

---

2. Plaintiffs' Memorandum Regarding Jurisdiction Of This Court (Plaintiffs' Post–Argument Brief) at 6.

3. *Id.*

4. Complaint For Declaratory Judgment (Compl.) ¶ 3.

5. *Id.*

6. *Id.* ¶ 4.

7. *Id.* ¶ 5.

8. *Id.* ¶ 6.

9. *Id.* ¶ 6–8.

10. *Id.* ¶ 8.

ing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; see also *Lewis v. United States,* 32 Fed.Cl. 59, 62 (1994). If, however, the motion challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evidence in order to resolve the factual dispute. *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991); see also *Lewis,* 32 Fed.Cl. at 62.

It is well-established that this court is one of specific and defined jurisdiction. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428, *aff'd,* 758 F.2d 665 (Fed.Cir.1984). The court's jurisdiction to entertain claims and to grant relief extends only so far as the United States has waived its sovereign immunity from suit. *Testan,* 424 U.S. at 399, 96 S.Ct. 948 (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)); *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir. 1993). The waiver of sovereign immunity must be expressed unequivocally and cannot be implied. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *Testan,* 424 U.S. at 399, 96 S.Ct. 948; *Zumerling v. Marsh,* 783 F.2d 1032, 1034 (Fed.Cir.1986). Any grant of jurisdiction to this court must be strictly construed. *Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349; *Cosmic Constr. Co. v. United States,* 697 F.2d 1389, 1390 (Fed.Cir.1982).

Pursuant to the Tucker Act, this court has:

jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1994). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Testan,* 424 U.S. at 398, 96 S.Ct. 948. The provisions plaintiffs rely upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government. *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (citations omitted).

Plaintiffs characterize their suit, in their Complaint For Declaratory Judgment, as "an action for declaratory judgment and/or relief brought pursuant to 28 USCA Section 1491 and for enforcement of a previous ruling of the United States Supreme Court."[11] The court will conceptually construe plaintiffs' complaint as advancing two causes of action. First, plaintiffs ask the court to "[i]ssue a declaratory judgment declaring and adjudicating that [p]laintiffs have right, title, and ownership in the Property, and be awarded same ...."[12] Second, in the alternative, plaintiffs ask the court to award them the reasonable value of the land.

The parties devote significant attention to the issue of whether plaintiffs' claim falls within the court's six-year statute of limitations. Although defendant ultimately raised the question of the court's power to grant the relief requested, the sole argument advanced by defendant in its motion to dismiss focused on the statute of limitations. The court is not, however, confined to the arguments raised in the parties' briefs. While the parties' arguments are forceful, they are nevertheless incomplete. The court believes in this instance it is necessary to look beyond defendant's arguments to fully ventilate the jurisdictional issues implicated by plaintiffs' complaint. The authority to conduct such an inquiry cannot be disputed. Neither the court nor the parties may waive subject matter jurisdiction. *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002). The court's jurisdiction over the subject matter may be raised at any point in the proceeding by the court *sua sponte* or by

---

**11.** *Id.* ¶ 1.

**12.** *Id.* at 2.

prompting from the parties. *Hambsch v. United States*, 857 F.2d 763, 764 (Fed.Cir. 1988); *Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed.Cir.1988); *Bayship Mgmt., Inc. v. United States*, 43 Fed.Cl. 535, 536 (1999) (citing *Nickerson v. United States*, 35 Fed.Cl. 581, 585 (1996)); RCFC 12(h)(3).

At the outset, it is important to recognize the character of plaintiffs' causes of action. Plaintiffs not only seek a declaration that they are the rightful owners of the property, but they also ask the court to award them the land. Such relief is a form of equitable relief. See, e.g., *Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *Crocker v. United States*, 125 F.3d 1475, 1477 (Fed.Cir.1997); *Froudi v. United States*, 22 Cl.Ct. 290, 293 n. 4, 294–95 (1991). The court proceeds with a full understanding that "an action that is equitable in nature [is] sharply distinguishable from an action at law for damages." *Crocker*, 125 F.3d at 1477.

■ Beginning with plaintiffs' request for a declaratory judgment that they possess "right, title and ownership" of the property in light of the Supreme Court's 1843 order, the court does not have independent authority to issue a declaratory judgment in the absence of an express grant of jurisdiction from Congress. *King*, 395 U.S. at 4–5, 89 S.Ct. 1501; *Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir.1997); *White Buffalo Constr., Inc. v. United States*, 52 Fed.Cl. 1, 5 n. 9 (2002); *First Atlas Funding Corp. v. United States*, 23 Cl.Ct. 137, 139 (1991). For example, Congress has provided that to afford relief in bid protest cases "the courts may award any relief that the court considers proper, including declaratory and injunctive relief ...." 28 U.S.C. § 1491(b)(2). Congress has also provided that this court "shall have jurisdiction to hear any suit for and issue a declaratory judgment under section 7428 of the Internal Revenue Code of 1986." *Id.* § 1507. Noticeably lacking from plaintiffs' complaint is a citation to any provision which confers upon the court the authority to grant a declaratory judgment here. The court is, therefore, without jurisdiction to independently entertain plaintiffs' request for a declaratory judgment.

Plaintiffs' alternative ground for relief seeking the reasonable value of the land in lieu of possession of the property does nothing to detract from the above analysis.[13] This court has recognized that a "party's request for money damages in the alternative to equitable relief does not alone alter the equitable character of the relief requested." *Froudi*, 22 Cl.Ct. at 293 n. 4 (quoting *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1099 (9th Cir.1990)). The court will, however, examine plaintiffs' alternative monetary claim at a later point in this opinion.

■ Although plaintiffs proceed under the auspices of enforcing a court order, the substance of the underlying cause of action can only be construed as one to quiet title.[14] Plaintiffs' claim resonates with verbiage and substance that has been exhaustively litigated and cast aside as not within the jurisdiction of the court. Plainly stated, the court is without jurisdiction to entertain a stand alone claim to quiet title. *Sioux Tribe of Indians v. United States*, 3 Cl.Ct. 536, 538 (1983) ("This court has the authority to issue money judgments only; it does not have the authority to decide questions of title to land."); *Baskett v. United States*, 2 Cl.Ct. 356, 363 (1983) ("This court has no jurisdiction to quiet title to land and thus, if plaintiffs seek to quiet title to the properties in question they are in the wrong court."). The case law is replete with instances where it has been recognized that a cause of action seeking possession of property falls outside of the court's jurisdiction. *Oak Forest, Inc. v. United States*, 23 Cl.Ct. 90, 94–96 (1991); *Gila Gin Co. v. United States*, 231 Ct.Cl. 1001, 1003, 1982 WL 25831 (1982); *Yaist v. United States*, 228 Ct.Cl. 281, 285–87, 656 F.2d 616 (1981); *Bourgeois v. United States*, 212 Ct.Cl. 32, 36 n. 1, 545 F.2d 727 (1976). The court declines to depart from this line of precedent.

---

13. Plaintiffs' Post–Argument Brief at 8; see also Tr. at 23, 25, 33.

14. Compl. at 2–3 (requesting that the court "declar[e] and adjudicat[e] that [p]laintiffs have right, title and ownership in the [p]roperty").

■ In the above-cited cases, however, a distinction has been drawn between claims for possession of property and traditional takings claims seeking just compensation. The distinction derives from Congress' stated intent in the Quiet Title Act (QTA) that jurisdiction for claims involving declaration of title rest with the district courts. 28 U.S.C. § 2409a; *First Atlas Funding Corp. v. United States*, 23 Cl.Ct. 137, 139 (1991); see also *Oak Forest*, 23 Cl.Ct. at 98. On the other hand, there is no doubt this court has jurisdiction to entertain takings claims. 28 U.S.C. § 1491(a)(1) (explaining that this court "shall have jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution ...."); *Malone v. Bowdoin*, 369 U.S. 643, 648 n. 8, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). After the passage of the QTA, however, the government frequently argued that the court was divested of jurisdiction to adjudicate takings claims where resolution of a title dispute was subsumed in the determination. That argument, however, has been firmly laid to rest. It is now well-established that the court has jurisdiction to make independent factual determinations of a claimant's specific property interest as a matter of course in adjudicating takings claims. *Mannatt v. United States*, 48 Fed.Cl. 148, 152 (2000); *Chevy Chase Land Co. of Montgomery County v. United States*, 37 Fed.Cl. 545, 564 (1997); *Oak Forest*, 23 Cl.Ct. at 96; *Yaist*, 228 Ct.Cl. at 285–86, 656 F.2d 616.

■ In a similar respect, the court possesses "authority to issue a declaratory judgment where 'it is tied and subordinate to a monetary award.'" *Ellis v. United States*, 222 Ct.Cl. 65, 69, 610 F.2d 760 (1979) (quoting *Austin v. United States*, 206 Ct.Cl. 719, 723, 1975 WL 22844 (1975)); see also *Bobula v. United States Dep't of Justice*, 970 F.2d 854, 859 (Fed.Cir.1992) (citing 28 U.S.C. § 1491(a)(2)) ("While limited equitable relief is sometimes available in Tucker Act suits,

the equitable relief must be incidental to and collateral to a claim for money damages."). It is, therefore, incumbent on plaintiffs to demonstrate that their claim could ultimately lead to a recovery of "actual, presently due money damages." *Testan*, 424 U.S. at 397–98, 96 S.Ct. 948. Plaintiffs could make such a showing and establish the necessary jurisdictional prerequisite by advancing a takings claim for just compensation. *Froudi*, 22 Cl. Ct. at 296 n. 11 (explaining that a claim for just compensation is a claim for money damages). Against this backdrop, plaintiffs nevertheless would need to proffer a takings claim that itself falls within the court's jurisdiction. *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1366 (Fed.Cir.1983); *Oak Forest*, 23 Cl.Ct. at 96 ("[T]he mere fact that title must be determined as part of [a takings claim] does not oust the court of jurisdiction, *assuming it otherwise exists.*" (emphasis added)).

As an initial matter, the court notes that plaintiffs expressly disavow that they are "pursuing an 'original' action for a 'taking.'" [15] Nevertheless, because a takings claim would be a prerequisite to invoking this court's jurisdiction in this context, the court will proceed assuming *arguendo* that an action for just compensation arises. The Takings Clause of the Fifth Amendment provides that "private property [shall not be] taken for public use, without just compensation." U.S. CONST. amend. V. Plaintiffs do present a colorable claim in their complaint that "[d]espite the Supreme Court's ruling in *Acosta*, the United States prevented and precluded Mr. Acosta from taking possession of the Property and subsequently took the Property without just compensation to Mr. Acosta." [16] Further, as an alternative basis for relief, plaintiffs seek an award equivalent to the "reasonable value of the Property ...." [17] At this juncture, it would appear that plaintiffs could state a claim within the court's jurisdiction.

Actions brought under the Tucker Act are time-barred, however, if they are not filed

---

15. Plaintiffs' Memorandum In Opposition To Defendant's Motion To Dismiss (Plaintiffs' Opp'n) at 5; see also Tr. at 14, 27.

16. Compl. ¶ 8.

17. *Id.* at 3; see also Plaintiffs' Post–Argument Brief at 8.

within six years of the date the causes of action accrued. 28 U.S.C. § 2501; see also *Figueroa v. United States,* 57 Fed.Cl. 488, 493 (2003); *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 632, 373 F.2d 356 (1967). The court's six-year statute of limitations is a jurisdictional requirement, which must be strictly construed. *Cmty. Bank & Trust v. United States,* 54 Fed.Cl. 352, 355 (2002); see also *Bear Claw Tribe, Inc. v. United States,* 36 Fed.Cl. 181, 187 (1996) (citing *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988)). The plaintiff bears the burden of proving by a preponderance of the evidence that the action was timely filed. *Mason v. United States,* 27 Fed.Cl. 832, 836 (1993). The court may not waive the statute of limitations. *Laughlin v. United States,* 22 Cl.Ct. 85, 99 (1990), *aff'd mem.,* 975 F.2d 869 (Fed.Cir.1992). In sum, a plaintiff's failure to comply with the statute of limitations "places the claim beyond the court's power to hear and decide." *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994); see also *Hair v. United States,* 350 F.3d 1253, 1256 (Fed.Cir.2003) (noting that claims not brought within six-years from the date the cause of action accrued are "forever barred").

The United States Court of Appeals for the Federal Circuit (Federal Circuit) held in *Hair* that "[a] constitutional claim can become time-barred just as any other claim can. Nothing in the Constitution requires otherwise." *Hair,* 350 F.3d at 1260 (quoting *Block v. North Dakota,* 461 U.S. 273, 292, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)). The Federal Circuit reached the same conclusion in *Stone Container Corp. v. United States,* 229 F.3d 1345, 1350 (Fed.Cir.2000): "Both the Supreme Court and this court have repeatedly held that the federal government may apply statutes of limitations to just compensation claims." See also *Alliance of Descendants of Texas Land Grants v. United States,* 37 F.3d 1478, 1481–82 (Fed.Cir.1994) (holding that a takings claim was barred by the statute of limitations).

With this in mind, the impending statute of limitations conflict looms large on the hori-

zon. As mentioned above, the Supreme Court and Federal Circuit have made it clear that actions for an alleged taking should be initiated within six years of their accrual date. The Supreme Court's order in *Acosta* was dated January 1843. While the exact date of accrual is unknown, plaintiffs' complaint reveals that the cause of action must have accrued during Mr. Acosta's lifetime.[18] The court, however, recognizes that for nearly one hundred years after the adoption of the Constitution there was no judicial tribunal to resolve takings claims. *Texas State Bank v. United States,* 60 Fed.Cl. 815, 822 (2004) (citing *Lion Raisins, Inc. v. United States,* 57 Fed.Cl. 435, 437–38 (2003)). It would not have been until March 3, 1887, that a true just compensation takings claim could have been brought in the Court of Claims. *Lion Raisins,* 57 Fed.Cl. at 438 n. 1.

Rather than focusing on the fora or avenues of relief available to aggrieved property holders in the mid-nineteenth century, see *id.* at 437–39, the court's inquiry focuses on whether plaintiffs "identif[ied] an event that directly affects the rights asserted in its suit that took place within six years prior to filing a complaint in this court." *Alliance of Descendants of Texas Land Grants v. United States,* 27 Fed.Cl. 837, 842 (1993) (citing *Japanese War Notes Claimants,* 178 Ct.Cl. at 632, 373 F.2d 356). Stated another way, the court counts backwards six years from November 26, 2003, the date on which plaintiffs filed their complaint, rather than counting forward from the date the cause of action allegedly accrued. As plaintiffs have failed to comply with the mandates of *Alliance of Descendants of Texas Land Grants* and *Japanese War Notes Claimants,* plaintiffs' claim is barred by the statute of limitations. Accordingly, plaintiffs' takings claim would not be timely, and the court is without jurisdiction to resolve the underlying title dispute. Likewise, without a valid takings claim, equitable relief would be inappropriate as it would not be "'tied and subordinate to a monetary award.'" *Ellis,* 222 Ct.Cl. at 69, 610 F.2d 760 (quoting *Austin,* 206 Ct.Cl. at 723).

---

18. Compl. ¶ 8.

The court reaches the same conclusion for the additional legal theories set forth in plaintiffs' post-argument brief. The court acknowledges that "the invocation of the implied contract theory is sufficient ... to set forth a basis for subject matter jurisdiction ...." See *Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed.Cir.1998); see also *United Int'l Investigative Servs. v. United States,* 26 Cl.Ct. 892, 900 (1992). It is also not subject to dispute that the court possesses jurisdiction over a dispute involving "any Act of Congress" as well as "any express ... contract." 28 U.S.C. § 1491(a)(1). In this case, the court can safely assume, without any comment or decision whatsoever on the merits of plaintiffs' new allegations, that plaintiffs have properly invoked all three theories. The court can make this assumption because these claims, just as plaintiffs' takings claim, are not immune from the court's statute of limitations. Any cause of action arising from an express°or implied contract, or an Act of Congress, did not arise within the six-year period preceding the date on which plaintiffs filed their complaint. See 28 U.S.C. § 2501. Plaintiffs' additional causes of action are, therefore, likewise time-barred.

Lastly, plaintiffs maintain, in the alternative, that should the court "somehow determine[ ] the Heirs' action to enforce the Supreme Court's Acosta Order is an 'original' action, it still would not be subject to a defense based on any statute of limitations."[19] Specifically, plaintiffs rely on 28 U.S.C. § 2415(c). Section 2415, however, deals only with "[t]ime for commencing actions brought by the United States." The action before the court is not an action brought *by* the United States, rather it is an action brought *against* the United States. Plaintiffs' argument is, therefore, misplaced. In this regard, the court notes in passing and without elaboration that it is the QTA, 28 U.S.C. § 2409a, which governs "[r]eal property quiet title actions." As was discussed above, § 2409a provides that actions to quiet title against the United States be brought in the district courts. Further, it is noteworthy that section 2409a contains a statute of limitations which provides that actions to quiet title "shall be barred unless ... commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g).

Moreover, plaintiffs' "original action" suffers from a second fatal flaw. Plaintiffs maintain that "no statute of limitations will operate to defeat a claim regarding title or possession of real property *granted pursuant to a treaty.*"[20] This argument on its face reveals the gravamen of plaintiffs' alternative claim. It is important to note that this inquiry is subtly distinct from plaintiffs' so-called enforcement action. While plaintiffs' enforcement action can be traced back to the treaty, its reliance on an 1843 Supreme Court order renders it one step removed from the treaty. On the other hand, assuming the propriety of the position advocated by plaintiffs here, their entitlement to the property would originate from and dwell entirely within the provisions of the treaty. In other words, plaintiffs' "original action" would be one that "involv[es] rights given or protected by a treaty ...." *Hughes Aircraft Co. v. United States,* 209 Ct.Cl. 446, 471, 534 F.2d 889 (1976) (quoting *Societe Anonyme Des Ateliers Brillie Freres v. United States,* 160 Ct.Cl. 192, 197–98, 1963 WL 8581 (1963)).

Section 1502 of Title 28 provides that the court does not possess "jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." In construing this statutory provision, this court has opined that:

> [T]he claim must be able to conceivably exist independently of, or separate and apart from, the subject treaty, as opposed to the claim deriving its existence so exclusively and substantially from certain express terms or provisions thereof that the consideration of the claim would necessitate construction of the treaty itself.

*Alliance of Descendants of Texas Land Grants,* 27 Fed.Cl. at 843 n. 5 (citing *Hughes*

---

**19.** Plaintiffs' Opp'n at 6.

**20.** *Id.* at 7 (emphasis added); see also *id.* at 6 ("Even an 'original' action to enforce property rights granted pursuant to a treaty is not subject to any statute of limitations.").

84

*Aircraft Co.,* 209 Ct.Cl. at 468, 534 F.2d 889); see also *Belk v. United States,* 858 F.2d 706, 711 (Fed.Cir.1988) (Bennett, S.J., concurring). Apart from the inherent jurisdictional problems discussed throughout this opinion, an "original action" for title or possession of the property in this case would "derive its life and existence—from [a] treaty stipulation." *United States v. Weld,* 127 U.S. 51, 57, 23 Ct.Cl. 498, 8 S.Ct. 1000, 32 L.Ed. 62 (1888); see also *Wood v. United States,* 961 F.2d 195, 199 (Fed.Cir.1992) (explaining that § 1502 applies where the claim "rel[ies] so heavily on a treaty that, but for the treaty, the plaintiff's claim would not exist"). Accordingly, pursuant to 28 U.S.C. § 1502, the court would be divested of jurisdiction to entertain plaintiffs' "original action" based upon a treaty.

Given this court's specific and defined jurisdiction, and given that plaintiffs waited approximately 161 years to bring their claim, the issues raised in this case lead to a classic example of Joseph Heller's Catch–22. To the extent the complaint can be construed as giving rise to a takings claim, which in turn would permit the court to adjudicate the underlying title dispute, it is barred by the statute of limitations. Perhaps aware that such a result would be forthcoming, plaintiffs were cornered into initiating an action which was tantamount to a suit to quiet title. The court is without independent jurisdiction to declare that title to the land in question belongs to plaintiffs and is without jurisdiction to grant plaintiffs their requested relief. When difficult jurisdictional questions were posed at oral argument regarding plaintiffs' causes of action, plaintiffs further retreated from their original position and attempted to seek solace under several newly constructed theories. As a result of this action, however, plaintiffs again ran squarely into the statute of limitations issue they were seeking to avoid when they disavowed their takings claim. Where the court does not possess jurisdiction, it has "no power to do anything but strike the case from its docket ...." *Johns–Manville Corp. v. United States,* 893 F.2d 324, 327 (Fed.Cir.1989) (quoting *The Mayor v. Cooper,* 73 U.S. (6 Wall.) 247, 18 L.Ed. 851 (1867)).

*Conclusion*

For the above-stated reasons, the Clerk of the Court is hereby directed to DISMISS the complaint. No costs.

IT IS SO ORDERED.