COMMUNITY BANK & TRUST, on Behalf of Itself and All Others Similarly Situated, Plaintiffs,

v.

The UNITED STATES, Defendant,

No. 01–571C.

United States Court of Federal Claims.

Nov. 8, 2002.

Blake Henry Bailey, Tyler, Texas, attorney of record for plaintiff and Walter Umphrey and Greg Thompson, Beaumont, Texas. J. Bennett White, of counsel, Tyler, Texas.

Kyle Eric Chadwick and Jeffrey A. Belkin, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. David M. Cohen, Director, and Mark A. Melnick, Assistant Director.

### OPINION and ORDER

FUTEY, Judge.

This takings case is before the court on defendant's motion to dismiss and plaintiff's motion for partial summary judgment. Defendant argues that plaintiff's claim has not been timely filed and fails to state a valid takings claim. Defendant asserts also that this court lacks subject matter jurisdiction over the claim. Plaintiff Community Bank and Trust ("Community") opposes dismissal and cross-moves for summary judgment as to liability for an alleged taking.

### Factual Background

Plaintiff is a bank chartered by the state of Texas and has been in operation since 1935.[1] In 1980 the United States Congress ("Congress") passed the *Monetary Control Act, Pub.L.* 96–221, Title I, 94 Stat. 132 ("MCA"). The act requires all banks to maintain certain funds in their vaults and in reserve accounts at the Federal Reserve Bank. Plaintiff alleges that the Federal Reserve derives income from those funds and passes the income to the United States Treasury ("Treasury") each year. Plaintiff asserts that such income is the bank's property and the payment of this income to the United States constitutes a taking.

The Federal Reserve system is the nation's central bank. It was established by Congress in 1913 to implement monetary policy and control aspects of the banking industry, among other purposes. On the authority of the Federal Reserve Act, twelve regional reserve banks were created to further these ends. The Reserve Banks act to implement monetary policy at the direction of the Board of Governors of the Federal Reserve ("Board of Governors"). The Federal Reserve also provides various commercial services to member banks such as check clearing, wire transferring, and the safekeeping of securities.[2]

Initially, only national banks (*i.e.,* those chartered by the Comptroller of the Currency) were required to become members of the Federal Reserve system. State-chartered banks had the option of joining and many did, in part to receive the system's commercial services. Maintaining "sterile" reserves against checking accounts and other deposits, pursuant to the Federal Reserve Act, is a significant cost of membership. The reserves are considered "sterile" because the funds so designated cannot be used for other purposes.

Reserves are held in either of two forms: deposits at the Federal Reserve Bank or as Federal Reserve Notes stored at the member bank, otherwise known as "vault cash." 12 U.S.C. § 461(c). Deposits at the Federal Reserve Bank are non-interest bearing.[3] Funds deposited as reserves are unavailable to be loaned out. Holding cash in a bank's vault likewise precludes those funds from being loaned out, resulting in the same loss of income opportunity.

---

1. Appendix (App.) to Defendant's (Def.'s) Motion (Mot.) to Dismiss at 17.

2. Federal Reserve Act of 1913, Pub.L. 63–43, 39 Stat. 251.

3. Complaint ¶ 9.

The high rates of inflation during the late 1970s increased the cost to banks of maintaining reserves. In response, some state-chartered banks dropped their Federal Reserve membership, thereby avoiding the need to maintain a reserve account with the Federal Reserve Bank. Congress soon sought to reverse this trend since the Federal Reserve's capacity to implement monetary policy is in some measure dependent on the size of reserve deposits. The MCA increased deposits by requiring reserves not only from national banks, but also from state-chartered banks and depository institutions with no Federal Reserve membership. Plaintiff has maintained the required reserves as vault cash and in accounts with the Federal Reserve since 1980.

Plaintiff alleges that the funds in its reserve account are used by the Federal Reserve to purchase Treasury securities and to make loans to other banks, and that such investments by the Federal Reserve earn interest.[4] It also alleges a mechanism by which its vault cash is used by the Federal Reserve to offset purchases of Treasury securities which in turn generate income for the Federal Reserve. Plaintiff states that interest and other net earnings of the Federal Reserve bank are paid each year to the Treasury.[5] In addition, plaintiff alleges that it is the owner of this income following the rule that "interest follows principal" as recognized in *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) and *Phillips v. Washington Legal Found.*, 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). Plaintiff asserts, therefore, that defendant has taken its property by paying the income to the Treasury.

Defendant acknowledges that Treasury securities are purchased with the funds deposited by plaintiff, that such investments earn income, and that the income is paid to the Treasury.[6] Defendant argues, however, that once funds are deposited with the Federal Reserve the money belongs to the Federal Reserve. Following the "interest follows principal" rule, defendant concludes that any interest on such funds belongs to defendant and, therefore, nothing owned by plaintiff is taken.

## Discussion

### I. Motion to Dismiss

Plaintiff filed its complaint on October 3, 2001. On January 4, 2002, defendant filed a motion to dismiss. Defendant asserted that plaintiff's claim is barred by the statute of limitations, that plaintiff fails to state a valid takings claim, and that any potential claim predicated on an "illegal exaction" under due process is beyond the jurisdiction of this court. Defendant supplemented its motion to dismiss on June 12, 2002,[7] asserting a lack of subject matter jurisdiction.

In ruling on a motion to dismiss for lack of jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed. Cir.1989); *Farmers Grain Co. v. United States*, 29 Fed.Cl. 684, 686 (1993). A plaintiff must make only a prima facie showing of jurisdictional facts through the submitted material in order to avoid a defendant's motion to dismiss. *See Raymark Indus. v. United States*, 15 Cl.Ct. 334, 338 (1988) (citing *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *See Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683; *see also Lewis v. United States*, 32 Fed.Cl. 59, 62

---

4. *Id.* ¶ 6.

5. Plaintiff's (Pl.'s) Reply (Rep.) to Def.'s Opposition (Opp'n) to Pl.'s Mot. for Partial Summary Judgment (Summ. J.) at 8–9 and n. 8.

6. Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J. at 2.

7. Def.'s Mot. to Supplement Briefing on Def.'s Mot. to Dismiss in Order to Move in the Alternative to Dismiss for Lack of Subject Matter Jurisdiction at 3.

(1994). If, however, the motion challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evidence in order to resolve the factual dispute. *See Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991); *see also Lewis*, 32 Fed.Cl. at 62.

## A. *Time–Barred*

Plaintiff brings its taking claim pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994). Actions brought under the Tucker Act are time-barred if they are not filed within six years of the date the cause of action accrued. 28 U.S.C. § 2501 (1994). The court's six-year statute of limitations is a jurisdictional requirement which must be strictly construed. *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994); *see also Bear Claw Tribe, Inc. v. United States*, 36 Fed.Cl. 181, 187 (1996) (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988)). Plaintiff bears the burden of proving that its action was timely filed. *Mason v. United States*, 27 Fed.Cl. 832, 836 (1993). The court may not waive the statute of limitations. *Laughlin v. United States*, 22 Cl.Ct. 85, 99 (1990), *aff'd mem.*, 975 F.2d 869 (Fed.Cir.1992). In sum, a plaintiff's failure to comply with the statute of limitations "places the claim beyond the court's power to hear and decide." *Catellus*, 31 Fed.Cl. at 404.

■ Determining when a taking cause of action accrues "must often be done in a somewhat imprecise manner ...." *Barnes v. United States*, 210 Ct.Cl. 467, 480, 538 F.2d 865 (1976); *see also Catellus*, 31 Fed.Cl. at 404. Generally, a taking cause of action first accrues when "all the events ... which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band*, 855 F.2d at 1577 (emphasis in original); *see also Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 373 F.2d 356 (1967), *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967).

The court determines whether the pertinent events have occurred under an objective standard. *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed.Cir.1995), *cert. denied*, 517 U.S. 1243, 116 S.Ct. 2496, 135 L.Ed.2d 189 (1996). A cause of action can accrue, therefore, even if plaintiff does not possess actual knowledge of all relevant facts.

Defendant asserts that the actions giving rise to plaintiff's complaint accrued in 1980 at the time the MCA was passed by Congress, well beyond the six-year limitation.[8] Plaintiff counters that an independent decision is made each year by the Board of Governors to pay interest in that year to the Treasury. Plaintiff contends that this yearly determination establishes a continuing claim.[9]

■ Plaintiff further contends that the statute of limitations should be tolled. Plaintiff does not deny that all facts required to bring a claim were available in 1980 when the MCA was implemented. It argues, however, that certain actions of the defendant led plaintiff to believe that no viable cause of action existed.[10] What plaintiff believes is not determinative. It is not necessary that plaintiff be certain of the merits of the claim or the extent of damages before filing suit. *Boling v. United States*, 220 F.3d 1365, 1371 (Fed.Cir.2000) (rejecting proposition that filing of a lawsuit can be postponed until full extent of damages is known); *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564 (Fed.Cir.1993) (holding that misunderstanding as to meaning of law does not toll accrual of cause of action when all relevant facts are known). Plaintiff need only be aware of sufficient facts to know a wrong occurred. *Japanese War Notes*, 178 Ct.Cl. at 631, 373 F.2d 356. The court concludes, therefore, that only the last six years of plaintiff's claim are within the court's jurisdiction.

■ Whether the full six years of plaintiff's claim can be maintained on the basis of the continuing claims doctrine need not be resolved at this stage of the proceeding. In

---

**8.** Def.'s Mot. to Dismiss at 8.

**9.** Pl.'s Response (Resp.) to Def.'s Mot. to Dismiss at 14–16.

**10.** *Id.* at 18.

1997 and 1998 it was a public law of Congress that mandated the payment of interest from the Federal Reserve deposit accounts to the Treasury. *Omnibus Budget Reconciliation Act,* Pub.L. 103–66, § 3002(a), 107 Stat. 312. Whatever the final effect of the statute of limitations, a cause of action has accrued within the six-year jurisdictional requirement for, at minimum, the 1997 and 1998 payments of income to the Treasury.

### B. *Jurisdiction: Non–Appropriated Funds Instrumentality*

■ Defendant contends that plaintiff's argument presents a dilemma: the taking occurred either at the time Congress passed the MCA, in which event the statute of limitations for its cause of action has long since run, or plaintiff is asserting that yearly discretionary decisions by the Board of Governors, and not Congress, are responsible for the taking. If the latter, defendant argues that the Board of Governors is a non-appropriated financial instrumentality ("NAFI") not within the jurisdiction of this court.[11]

NAFIs are "federal government entities whose 'monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales.'" *El–Sheikh v. United States,* 177 F.3d 1321, 1322 (Fed.Cir.1999) (quoting *Cosme Nieves v. Deshler,* 786 F.2d 445, 446 (1st Cir.1986)). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has held that the Board of Governors is an NAFI. *Denkler v. United States,* 782 F.2d 1003, 1005 (Fed.Cir.1986). Judgments awarded by the United States Court of Federal Claims must be paid out of appropriated funds, 28 U.S.C. § 2517. It has been held that this court lacks jurisdiction to entertain actions against non-appropriated funds instrumentalities where the judgment could not be paid from a source of appropriated funds. *Furash & Co. v. United States,* 252 F.3d 1336, 1339 (Fed.Cir.2001).

It is not fully clear whether actions by the Board of Governors or Congress has been the cause of any possible taking in every year claimed by plaintiff.[12] The fact that in two years Congress has caused the payment of interest to the Treasury, however, again militates in favor of plaintiff. At least for these two years, if liability for a taking is found, funds to satisfy judgment would come from those appropriated by Congress. Therefore, the court denies this basis of defendant's motion to dismiss and reserves judgment on the relevance and consequence of the Board of Governors' NAFI status until additional facts are available.

### C. *Failure to State a Valid Takings Claim*

■ Defendant argues that plaintiff fails to state a claim upon which relief may be granted and seeks to dismiss the claim pursuant to RCFC 12(b)(6). First, defendant states that plaintiff has no property interest in the interest or other income earned by the Federal Reserve. Second, were the court to find that plaintiff holds a property interest, defendant claims that the payment of that income to the Treasury does not constitute a taking.

The court will grant such a motion only if it appears beyond a doubt that plaintiff has failed to allege facts sufficient to support the claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mostowy v. United States,* 966 F.2d 668, 672 (Fed.Cir. 1992). In ruling on an RCFC 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

---

**11.** Def.'s Mot. to Supplement Briefing on Def.'s Mot. to Dismiss in Order to Move in the Alternative to Dismiss for Lack of Subject Matter Jurisdiction, at 1.

**12.** *Id.* at 3.

"[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *Blaze Constr., Inc. v. United States,* 27 Fed.Cl. 646, 650 (1993) (internal quotations omitted).

The Fifth Amendment to the Constitution states that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. In order to present a valid claim for a compensable taking, a claimant must allege and prove that (1) it has a specific property interest, and (2) the government has appropriated that interest, leaving the claimant without the use or benefit of that interest. *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1027–29, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). First, the court will look to the threshold requirement: whether plaintiff has identified a property interest cognizable under the Fifth Amendment. *M & J Coal Co. v. United States,* 47 F.3d 1148, 1154 (Fed.Cir.1995). The property interest claimed by plaintiff is the income earned as interest on the funds it deposits with the Federal Reserve and income allegedly derived by the Federal Reserve on plaintiff's cash reserves.

Defendant argues that plaintiff is not the owner of the funds held on its account at the Federal Reserve and, therefore, can have no cognizable interest in the income derived from those funds. Defendant states:

> A deposit by a depository institution in a Reserve bank account in order to meet reserve requirements is a deposit, and a deposit results in a change in the legal ownership of the amount deposited, creating a debtor-creditor relationship between the Reserve bank and the depository institution that makes the deposit. Accordingly, the Reserve bank properly becomes the "owner" of the principal, and has a legal right to the earnings thereon.[13]

Second, defendant states that when plaintiff chooses to hold vault cash rather than a reserve account at the Federal Reserve bank, plaintiff "provides the issuing Federal Reserve Bank with no funds in which Community has any ownership interest. Thus, there are no funds held by the Reserve Bank

related to Federal Reserve notes the earnings of which belong to [Community]." [14]

Defendant cites several cases that describe the legal relationship of a bank to its depositor which are fairly represented by the statement that "when a general deposit is made, title to the deposited funds passes immediately to the bank in exchange for a promise by the bank to refund the same amount, or a portion thereof, on demand, and the bank may use the money for its own profit." *United States v. BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. 106, 109 (D.D.C. 1993).

It cannot be said, however, that this statement holds for all types of accounts, among all types of banks and depositors. Plaintiff argues that *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) and *Phillips v. Washington Legal Found.,* 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) are better precedents for the current case. The *Webb's* case involved interest that accrued to an interpleaded fund, deposited with the clerk of the Florida court, and held in a bank account. The United States Supreme Court ("Supreme Court") found a cognizable property interest in the principal, despite the fact that the money was paid over first to the clerk, then deposited with a bank. *Webb's,* 449 U.S. at 161, 101 S.Ct. 446.

*Phillips* perhaps more directly involves a plaintiff's property right in funds deposited with a bank. Under the Texas Interest on Lawyers Trust Account (IOLTA) program, an attorney who received client funds was required to place them in an interest-bearing account. The interest was then paid to the Texas Equal Access to Justice Foundation, which financed legal services for indigent clients. The Supreme Court found that under Texas law the principal held in IOLTA accounts was the property of the client. *Phillips,* 524 U.S. at 164, 118 S.Ct. 1925.

Defendant argues that:

> [F]unds deposited with a bank become the property of the bank, and the depositor

---

**13.** Def.'s Mot. to Dismiss at 15.

**14.** *Id.* at 13–14.

obtains, in exchange, a claim on the bank's assets, becoming a general creditor of the bank. The bank's earnings on assets funded by deposited monies likewise belong to the bank, and its obligation to pay interest on the depositor's claim is determined by the contractual arrangement between them .... [15]

Defendant's proposition is true among depositors choosing to place their funds with a private bank. *Webb's* and *Phillips* indicate, however, that this is not the necessary rule where the law abrogates this choice, mandating the deposit or the use to which any interest is put.

The existence of a property interest is determined by reference to "existing rules or understandings that stem from an independent source such as state law." *Phillips*, 524 U.S. at 164, 118 S.Ct. 1925 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The Fifth Amendment protects such interests, but does not create them. *Id.*

*Phillips* and *Webb's* both recognize, however, that there are circumstances in which a client or company can have a property interest cognizable under the Fifth Amendment in the principal of a bank account. *Phillips*, 524 U.S. at 164, 118 S.Ct. 1925 ("all agree that under Texas law the principal held in IOLTA trust accounts is the 'private property' of the client."); *Webb's*, 449 U.S. at 161, 101 S.Ct. 446 ("The creditors thus had a state-created property right to their respective portions of the fund."). This property interest is greater than the simple right to withdraw like funds.

In addition, plaintiff asserts that it is the beneficial owner of the principal deposited with the Federal Reserve. Plaintiff argues that such an interest is enough to establish a right to the bank account and its accrued interest even if legal title is held by the Federal Reserve.

Both parties urge the court to consider two recent decisions of the Federal Circuit in determining whether plaintiff has a cognizable property interest: *United States Shoe Corp. v. United States*, 296 F.3d 1378 (Fed. Cir.2002) and *Leider v. United States*, 301 F.3d 1290 (Fed.Cir.2002). The plaintiffs in both cases claimed a right to accrued interest on funds held by the government.

*Leider* was a creditor owed a distributive share of a bankruptcy settlement. A failed attempt was made by the government to contact and pay Leider. Unable to send payment, Leider's funds were held by the government for approximately two years. When Leider finally received his share of the settlement it did not include interest for the delay. Leider asserted a right to such interest and brought a claim to recover it. The court rejected the claim because, as a factual matter, the government did not invest the funds and so "interest was never earned on the funds." *Leider*, 301 F.3d at 1296. In addition, the court held that the relevant law did not "impose an obligation on the government to earn and disburse interest." *Id.* It is not clear how this reasoning applies to the current case. *Leider* is taken to mean that there is no duty on the government to earn interest on deposited funds and, when no interest has been earned, nothing has been taken. By contrast, in the present case, the Federal Reserve does put to work the principal that plaintiff has deposited and income appears to be derived from it.

In *U.S. Shoe*, an exporter paid a user-fee type tax into the Harbor Maintenance Trust Fund. The Supreme Court, however, ultimately ruled that the tax was unconstitutional. As a result, U.S. Shoe was entitled to a refund of the money it had paid. U.S. Shoe asserted a right to recover not only the tax payments but interest as well. The Federal Circuit ruled that no prejudgment interest was due. The court held that the tax paid by U.S. Shoe "became the property of the Treasury upon payment ...." *U.S. Shoe*, 296 F.3d at 1384. Applying the same "interest follows principal" rule recognized by *Phillips*, the Federal Circuit determined that "the interest earned on the tax payments is also the property of the government." *Id.* Plaintiff notes, however, that the ownership of funds in *U.S. Shoe* can be distinguished from that in *Phillips*. The Federal Circuit

---

**15.** Def.'s Rep. to Pl.'s Resp. to Def.'s Mot. to Dismiss at 2.

states that "[t]he tax revenue here was not held by the government as property of U.S. Shoe." *Id.* Unlike *U.S. Shoe,* in *Phillips, Webb's,* and the present case, the principal deposited pursuant to the various statutes is held with the clear view of being returned or otherwise used for the benefit of the depositor.

For the limited purpose of this motion to dismiss, the court finds that plaintiff has a property interest in the principal of its reserve accounts, cognizable under the Fifth Amendment. Precedent indicates such an interest and defendant does not adequately argue otherwise. A more thorough examination during pretrial and trial proceedings of the nature of reserve accounts, vault cash, and how income accrues from those funds may, of course, ultimately lead to a different conclusion.

■ Where a property interest is recognized, the court must consider whether plaintiff has failed to allege facts sufficient to state a valid takings claim. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Defendant argues that no such facts are evident. Even if a cognizable property interest can be found, defendant asserts, plaintiff "makes a claim only as to one strand of its property-the strand of the earnings derived by the Federal Reserve on those assets." Defendant argues that "the destruction of one 'strand' of the bundle [of property rights] is not [necessarily] a taking, because the aggregate must be viewed in its entirety."[16] This argument amounts to the assertion that a *per se* analysis is improper when the property at issue is money rather than real property.

Defendant further argues that an *ad hoc* analysis demonstrates plaintiff's lack of a valid claim. In brief, defendant states that plaintiff has not alleged any facts to show that it suffered a significant economic impact by the passage of the MCA; that it had no investment-backed expectations to the interest income that flows from the reserve deposits; and that the character of the government action does not provide any basis for a

heightened analysis of the payment of interest income to the Treasury.[17]

The United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"), however, has recently applied a *per se* analysis to takings of money. *Washington Legal Found. v. Texas Equal Access to Justice Found.,* 270 F.3d 180, 185 (5th Cir.2001) *reh'g denied en banc,* 293 F.3d 242 (5th Cir. 2002), *petition for cert. filed sub nom., Phillips v. Washington Legal Found.,* 71 U.S.L.W. 3092 (U.S. June 26, 2002) (No. 02–1). The government's appropriation of interest in *Webb's* was also found to be a categorical taking, although it was decided prior to the widespread use of the term *per se* to describe such takings. Whether a *per se* or *ad hoc* analysis applies to the current case, however, cannot be determined without a more thorough definition of plaintiff's property right. A valid claim may attach both to plaintiff's vault cash and reserve account claim, to one and not the other, or neither. A final determination requires a more detailed ventilation of the facts of how these funds are used by the Federal Reserve.

The court finds that plaintiff has stated a claim upon which relief may be granted.

## II. Plaintiff's Motion for Partial Summary Judgment

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *RCFC* 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Sec'y, DHHS,* 998 F.2d 979 (Fed.Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the

---

**16.** Def.'s Rep. to Pl.'s Resp. to Def.'s Mot. to Dismiss at 13 (citing *Andrus v. Allard,* 444 U.S. 51, 66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979)).

**17.** *Id.*

opposing party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir. 1987). Alternatively, if the moving party can show that there is an absence of evidence to support the opposing party's case, the burden then shifts to the opposing party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

Plaintiff argues that the payment of interest on its principal to the Treasury is a taking as matter of law. It is acknowledged that even where takings questions are highly dependent on a fact-intensive analysis, summary judgment may be appropriate. *See 767 Third Ave. Assocs. v. United States*, 48 F.3d 1575, 1580 (Fed.Cir.1995). The court is further aware that defendant also believes that "this case should be determined as a matter of law" and that "there exist no material facts relating to plaintiff's motion" at all.[18] Summary judgment is nevertheless not appropriate in this case. The nature of the property interest and the scope of alleged appropriation are disputed and the court would benefit from further ventilation of these issues. *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed.Cir.1983); *Philadelphia Suburban Corp. v. United States*, 217 Ct.Cl. 705, 707, 1978 WL 8442 (1978).

One key element of plaintiff's claim is a determination of whether the reserve account principal is the property of plaintiff or the Federal Reserve. As noted above, this question has been addressed recently by the Fifth Circuit. That court has said of a case involving an IOLTA bank account that "the linch-

pin for this case has already been inserted by the Supreme Court: 'interest income [...] is the "private property" of the owner of the principal.'" *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 270 F.3d 180, 188 (5th Cir.2001), *reh'g denied en banc, Washington Legal Found. v. Texas Equal Access to Justice Found.*, 293 F.3d 242 (5th Cir.2002), *petition for cert. filed sub nom., Phillips v. Washington Legal Found.*, 71 U.S.L.W. 3092 (U.S. June 26, 2002) (quoting *Phillips*, 524 U.S. at 172, 118 S.Ct. 1925). The court concluded that "because the State has permanently appropriated [the] interest income ... instead of merely regulating its use, there is a *per se* taking." *Id.* (Comparing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) with *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). A contrary United States Court of Appeals for the Ninth Circuit case has recently been accepted for review by the Supreme Court, *Washington Legal Found. v. Legal Found. of Washington*, 271 F.3d 835 (9th Cir.2001), *cert. granted*, ⸺ U.S. ⸺, 122 S.Ct. 2355, 153 L.Ed.2d 178 (U.S. June 10, 2002) (No. 01–1325), and a petition to join the Fifth Circuit case has been filed.[19]

The Federal Circuit has not addressed this subject and the court declines to follow the Fifth Circuit's decision, particularly while the petition for certiorari is pending.[20] There exists ambiguity as to both the nature of reserve accounts and the income derived from them. It is not clear, for instance, that plaintiff's funds are placed in the type of "separate, interest-bearing ... account" at issue in IOLTA cases. *Phillips*, 524 U.S. at 161, 118 S.Ct. 1925. Further, while income is in some manner derived from funds deposited by plaintiff at the Federal Reserve, the amount of income cannot be determined by a simple calculation. The sums that plaintiff describes as interest on reserves may include more than interest, according to the common

---

18. Def.'s Statement of Genuine Issues in Opp'n to Pl.'s Mot. for Summ. J. at 1.

19. *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 293 F.3d 242 (5th Cir. 2002) (*reh'g denied en banc), petition for cert. filed*

*sub nom., Phillips v. Washington Legal Found.*, 71 U.S.L.W. 3092 (U.S. June 26, 2002) (No. 02–1).

20. *Id.*

meaning of that term. What is given to the Treasury each year as "interest on reserves" is in fact a percentage of the net earnings of the Federal Reserve, derived only in part from the investment of the reserve funds.[21]

It is also questionable whether a taking of "interest" is the proper description of plaintiff's claim related to its cash reserves. It is argued that the funds held by plaintiff as reserves are used by the Federal Reserve to invest and earn income. The mechanism by which the Federal Reserve allegedly appropriates the funds in plaintiff's possession is less than clear. Plaintiff argues that its sterile reserves in some way provide the Federal Reserve with more net income than it would have otherwise achieved. Since plaintiff's capital makes possible this additional revenue, plaintiff implies that it is owner of those increased earnings. That proposition appears far divorced from the narrow rule of *Phillips* declaring that "interest follows principal" where it can be ascribed to individual, private accounts.

Further, it cannot yet be determined whether a *per se* or *ad hoc* analysis is applicable to the facts at issue. Whether defendant's actions constitute the total deprivation of an entire property interest, or are more akin to regulation, can be determined only by a more informed analysis. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). This is not the case here.

In addition to its takings claim plaintiff asserts that defendant's payment of interest on reserve accounts "constitute an 'illegal exaction' of property ... since the Federal Reserve has ... confiscated interest on required reserves that belongs to the Plaintiff ...." [22] As with the takings claim, this claim depends on a determination by the court that plaintiff has a property interest in the reserve accounts sufficient to invoke the "interest follows principal rule." Judgment on the illegal exaction claim is reserved until the property interest and its implications for the takings claim are decided.

*Conclusion*

For the above stated reasons, defendant's motion to dismiss for timeliness is DENIED–IN–PART and ALLOWED–IN–PART. Plaintiff's claim is limited to the statutory six years prior to the date of its complaint. Defendant's motion to dismiss for failure to state a claim and its supplemental motion for lack of subject matter jurisdiction are DENIED. Plaintiff's cross-motion for partial summary judgment is DENIED. A status conference concerning pretrial proceedings and class certification shall be held at the National Courts Building, in Washington, D.C., on Wednesday, December 11, 2002, at 2:30 p.m.

IT IS SO ORDERED.

---

**21.** App. to Pl.'s Resp. to Def.'s Mot. to Dismiss at 64.

**22.** Pl.'s Mot. for Partial Summ. J. at 25.