**TEXAS STATE BANK (successor by merger to Community Bank & Trust), Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–571C.

United States Court of Federal Claims.

June 8, 2004.

Blake Henry Bailey, Tyler, Texas, attorney of record for plaintiff and Walter Umphrey and Greg Thompson, Beaumont, Texas. J. Bennett White, of counsel, Tyler, Texas.

Kyle Eric Chadwick, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant. David M. Cohen, Director, and Mark A. Melnick, Assistant Director.

## *OPINION*

FUTEY, Judge.

This case comes before the court after briefing and an evidentiary hearing held on April 20, 2004. On November 8, 2002, the court issued an Order and Opinion denying defendant's motion to dismiss and cross-motions for summary judgment. In the opinion, the court noted that "[t]he nature of the property interest and the scope of the alleged appropriation are disputed and the court would benefit from further ventilation of these issues." *Cmty. Bank & Trust v. United States,* 54 Fed.Cl. 352, 360 (2002). The court found that it was not "clear, for instance, that plaintiff's funds are placed in the type of separate, interest-bearing ... account at issue in" potentially analogous cases. *Id.* (quotation omitted). The case was stayed, however, pending a decision by the United States Supreme Court (Supreme Court) in *Brown v. Washington Legal Found.,* 538 U.S. 216, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003), which decided issues closely related to claims asserted by plaintiff. Both parties filed reports addressing the implications of that case for the present action. Defendant contends that this case must be dismissed for lack of jurisdiction because, *inter alia,* the Board of Governors of the Federal Reserve System (Federal Reserve) is a non-appropriated funds instrumentality (NAFI). This argument was considered by the court in its previous Order and Opinion, wherein it stated that "[i]t is not fully clear whether actions by the [Federal Reserve] or Congress has been the cause of any possible taking in every year claimed by plaintiff." The court denied "this basis of defendant's motion to dismiss and reserve[d] judgment on the relevance and consequence of the [Federal Reserve's] NAFI status until additional facts [became] available." *Cmty. Bank,* 54 Fed.Cl. at 356. Since the court's Order and Opinion, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has further commented on the standards guiding NAFI cases. See *Core Concepts of Florida, Inc. v. United States,* 327 F.3d 1331 (2003); *AINS, Inc. v. United States,* 365 F.3d 1333 (Fed.Cir.2004).

## *Factual Background*

The facts of this case were outlined in the court's previous Order and Opinion. *Cmty. Bank,* 54 Fed.Cl. at 353–54. Only a brief recitation of facts relevant to the following discussion is included here. Plaintiff, Texas State Bank, is the successor by merger to Community Bank and Trust, which originally filed this action. It is a bank chartered in the state of Texas which holds or has held reserves with Federal Reserve banks in accordance with the Monetary Control Act of

1980, Pub.L. 96–221, Title I, 94 Stat. 132 (March 31, 1980).

Plaintiff alleges that the funds in those reserve accounts accrue interest when invested by the Federal Reserve and that it is the owner of the principal in the reserve accounts. Plaintiff therefore believes it is entitled to the interest that accrues pursuant to the "interest follows principal" rule described by the Supreme Court in *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) and *Phillips v. Washington Legal Found.*, 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998), among other cases.

### Discussion

The court is obligated to consider its own jurisdiction at any time in a proceeding, whether by motion of a party or by the court *sua sponte*. *Hambsch v. United States*, 857 F.2d 763, 764 (Fed.Cir.1988); *Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed.Cir.1988) ("A court may and should raise the question of its jurisdiction *sua sponte* at any time it appears in doubt."); *Miller v. United States Postal Serv.*, 231 Ct.Cl. 804, 809, 1982 WL 25236 (1982); RCFC 12(h)(3); see also *First Fed. Sav. Bank of Hegewisch v. United States*, 52 Fed. Cl. 774, 787 n. 25 (2002).

In its initial Order and Opinion, the court stated that it was not clear from the briefs submitted whether Congress or the Federal Reserve was responsible for the taking alleged by plaintiff. The fact that in two years it appeared that Congress mandated payments from the Federal Reserve to the Treasury, the source of which was alleged earnings on plaintiff's reserve accounts, persuaded the court that in "[a]t least these two years, if liability for a taking is found, funds to satisfy judgment would come from those appropriated by Congress." *Cmty. Bank*, 54 Fed.Cl. at 356. The Omnibus Budget Reconciliation Act of 1993, Pub.L. 103–66, § 3002(a), 107 Stat. 312 (Aug. 10, 1993), states, in part, that a certain "portion of net earnings of each Federal reserve bank ... shall be deposited in the surplus fund of the bank." A portion of such surplus funds

"[d]uring fiscal years 1997 and 1998 ... shall be transferred to the Board for transfer to the Secretary of the Treasury for deposit in the general fund of the Treasury." *Id.*

During the evidentiary hearing plaintiff argued that "[w]hatever the status of the Federal Reserve Board is as to NAFI, our claim is not against the Federal Reserve Board; it is a claim against the U.S. Treasury or the United States ... NAFI simply does not apply to suits against the United States for funds that are part of the general revenue."[1] The briefing and testimony given by the parties have clarified the facts underlying plaintiff's claim and, therefore, the court begins by readdressing its subject matter jurisdiction.

The court will not dismiss plaintiff's complaint for lack of subject matter jurisdiction if the facts reveal any possible basis on which it might prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); see also *Lewis v. United States*, 32 Fed.Cl. 59, 62 (1994). The court must accept as true the undisputed factual allegations and construe the facts in the light most favorable to plaintiff. *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed.Cir.1989). A plaintiff must make only a prima facie showing of jurisdictional facts through the submitted material in order to avoid dismissal. *Raymark Indus. v. United States*, 15 Cl.Ct. 334, 338 (1988) (citation omitted). If, however, the truth of jurisdictional facts is challenged, the court may consider relevant evidence in order to resolve the factual dispute. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991); see also *Lewis*, 32 Fed.Cl. at 62.

The United States Court of Federal Claims (Court of Federal Claims) is a court of specific and defined jurisdiction. It is authorized by the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated dam-

---

1. Transcript at 16.

ages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

■ Apart from exceptions "provided by the Contract Disputes Act of 1978, every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropriation therefor ...." 28 U.S.C. § 2517(a). The Federal Circuit has held this statute to limit the Court of Federal Claims' jurisdiction to cases in which a resulting judgment can be paid from appropriated funds. *Furash & Co. v. United States,* 252 F.3d 1336, 1339 (Fed.Cir.2001) ("The jurisdictional grant in the Tucker Act is limited by the requirement that judgments awarded by the Court of Federal Claims must be paid out of appropriated funds.").

■ The United States Court of Claims, the predecessor to this court, long held that "[t]o be actionable *in this court,* [the agency or contract] must be one which, in the contemplation of Congress, could obligate public monies." *Kyer v. United States,* 177 Ct.Cl. 747, 751, 369 F.2d 714 (1966). In circumstances where "Congress has indicated that public funds shall not be involved" the court was without authority to "grant the relief requested." *Id.* at 752, 369 F.2d 714. Congress assumed this understanding of the court's authority when the Tucker Act was amended in 1970 to extend liability to the United States for the actions of an enumerated set of NAFIs. 28 U.S.C. § 1491(a)(1) (stating that "an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.").

The Federal Circuit has held that "absent some specific jurisdictional provision to the contrary, the Court of Federal Claims generally lacks jurisdiction over actions in which appropriated funds cannot be obligated." *Core Concepts,* 327 F.3d 1331, 1334 (Fed. Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 805, 157 L.Ed.2d 693 (2003). That requirement has been interpreted, however, "to mean that, when an issue arises under the non-appropriated funds doctrine, the Court of Federal Claims must exercise jurisdiction absent a clear expression by Congress that it intended to separate the agency from general revenues." *Id.* (quotation omitted). The Federal Circuit has also held that the Federal Reserve is not susceptible to suit in this court because it does not operate with appropriated funds. *Denkler v. United States,* 782 F.2d 1003, 1005 (Fed.Cir.1986); see also *Research Triangle Inst. v. Bd. of Governors of Fed. Reserve Sys.,* 132 F.3d 985, 989 (4th Cir.1997) (holding "that the Tucker Act does not waive [the government's] sovereign immunity" for Federal Reserve activities.).[2]

Defendant contends that, "Community's sole claim is that the [Federal Reserve] Board possessed an obligation to pay plaintiff but failed to do so. Thus ... the complaint must be dismissed because the United States has not consented to suit against the Board."[3] The court previously reserved judgment on this argument because it had concerns that the Federal Reserve's NAFI status was altered by the payment of Federal Reserve income to the Treasury, and because it was a statute and not the actions of the Federal Reserve which allegedly constituted a taking.

Plaintiff argues, however, that it "has not sued the Board and is not asking the Board to pay it anything .... Plaintiff is not suing the Board over the failure of the Federal Reserve Banks to pay interest on reserves."[4] Plaintiff makes an analogy to *Phillips,* stating:

---

**2.** A notably thorough history of the NAFI doctrine has recently been provided by *AINS, Inc. v. United States,* 56 Fed.Cl. 522, 527–537 (2003).

**3.** Defendant's Motion To Supplement Briefing On Defendant's Motion To Dismiss In Order To Move In The Alternative To Dismiss For Lack Of Subject Matter Jurisdiction at 3.

**4.** Plaintiff's Response To Defendant's Motion To Supplement Briefing On Defendant's Motion To Dismiss In Order To Move In The Alternative To Dismiss For Lack Of Subject Matter Jurisdiction at 3.

In *Phillips*, the interest earned by attorneys on client funds required to be held by the attorneys was taken by the Government instead of being paid to the clients. Here, just as in *Phillips*, interest earned by the Federal Reserve Banks on Plaintiff's reserves which are required to be held with the Federal Reserve Bank and in the form of Federal Reserve notes is taken by the Government rather than being paid to the Plaintiff. The action in *Phillips* was not brought against the attorneys that earned the interest taken by the Government, nor has this action been brought against the Federal Reserve Banks which have earned the interest taken by the Government. In both cases, the actions have been brought against the Government, the taker of the funds.[5]

It is noted that "the individual named in the suit does not change the nature of the action.... At issue is not whether the suit is filed against the [agency], but rather whether the United States has agreed to be sued for the actions alleged." *Lion Raisins, Inc. v. United States*, 58 Fed.Cl. 391, 396 (2003). There is, nevertheless, an equivocation on the term "taker" involved in plaintiff's argument.

The Treasury has received funds from the Federal Reserve. The law that mandated such payments, however, defined those payments as "net earnings" of the Federal Reserve.[6] The calculation of those net earnings depends on the expenses of the Federal Reserve, which are largely discretionary. In fact, plaintiff has maintained that the Federal Reserve possesses discretion to pay interest on reserve accounts should it deem it proper policy: "[t]here is no statute, rule, regulation, order or policy that prevents the Federal Reserve from paying interest on reserves held by depository institutions. Indeed, the Board's Legal Division has opined that the Federal Reserve possesses authority to pay interest on reserves to depository institutions."[7] Even if "interest" on reserve accounts held by the Federal Reserve constitutes the bulk of its revenue, and the Treasury receives the net earnings from such revenue, there is no statute that specifically requires the payment of *interest* on reserve accounts to the Treasury. Were the Federal Reserve to make the interest payments on reserves to depository institutions, it would have the effect of reducing the net earnings paid to the Treasury. Assuming *arguendo*, therefore, that the payments to the Treasury were in fact a taking, the Federal Reserve and not Congress is the "taker." At bottom, despite plaintiff's argument to the contrary, its action is directed against the activities of the Federal Reserve.

The direction of the flow of funds from the Federal Reserve to the Treasury is also relevant to the court's concern about the Federal Reserve's continuing NAFI status. Determining the court's jurisdiction depends on "whether Congress has clearly expressed its intent that the agency, or the particular activity that gave rise to the dispute in question, is to be separated from general federal revenues." *Core Concepts*, 327 F.3d at 1336. In *Core Concepts*, a contractor brought an action against Federal Prison Industries (FPI), a government owned corporation that provides work simulation programs and training for inmates of federal prisons. The Federal Circuit agreed with the Court of Federal Claims that FPI did not operate with appropriated funds and stated that whether FPI was a NAFI could be understood "through FPI's enabling legislation." *Id.* In *Denkler*, the Federal Circuit held the Federal Reserve to be a NAFI after reviewing its enabling legislation, which revealed an intention to keep the Federal Reserve separate from general federal revenues.

The crucial aspect of a *non-appropriated funds instrumentality* is whether it is authorized to obligate or spend *appropriated* funds. The Federal Circuit in *Core Concepts*, however, considered the fact that "all monies under FPI's control" were required to "be deposited into the U.S. Treasury to the credit of the Prison Industries Fund ...." *Id.* The designation of a particular fund satisfied the Federal Circuit that "FPI's funds are to be kept

---

5. *Id.* at 3–4.

6. Pub.L. No. 103–66 § 3002(a), 107 Stat. 337 (Aug. 10, 1993).

7. Plaintiff's Memorandum Of Contentions Of Fact And Law at 6.

distinct from general federal revenues." *Id.* Funds are appropriated when Congress authorizes by law an agency or instrumentality "to incur obligations and to make payments *out* of the Treasury." *Andrus v. Sierra Club,* 442 U.S. 347, 359–60 n. 18, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979) (quotation omitted) (emphasis added). In this respect, the Federal Reserve is not an agency operating with appropriated funds and Congress has expressed the clear intention that its expenses be kept separate from general federal revenues. See *Denkler,* 782 F.2d at 1004. The question remains, however, whether its non-appropriated status is affected by the fact that funds are paid *into* the Treasury. The court holds that it is not.

*Core Concepts* noted that there was no express provision in FPI's enabling legislation preventing Congress from appropriating funds. The court held, however, that "the absence of such a statement in an agency's enabling legislation is not dispositive of the agency's NAFI status." *Core Concepts,* 327 F.3d at 1336. The Federal Circuit, therefore, looked beyond the text of the legislation to FPI's characteristics in determining whether Congress clearly expressed that it intended "to separate the agency from general federal revenues." *Furash,* 252 F.3d at 1339.

The first step, therefore, is for the court to look to enabling legislation to determine whether funds are or can be appropriated to the agency in question. If the enabling legislation is not clear or is silent, however, the court interprets *Core Concepts* to encourage a further step. In such a case, the court may look not only to an instrumentality's authority to obligate or spend funds from the Treasury, but also, among other factors, to the flow of funds from the instrumentality to Treasury. In the case of *Core Concepts,* the Federal Circuit noted that FPI made payments to the Treasury. The fact that such payments were placed in a fund designated specifically for the instrumentality's operation, however, provided the indicia of Congress' intent to separate FPI from general federal revenues. By contrast, in the present case the Federal Reserve's payments go to the Treasury's general fund.

An implication of the *Core Concepts* rationale is that payments from an instrumentality into the general federal revenues may contribute to the determination that said instrumentality lacks NAFI status. The Federal Circuit has not held, however, that a payment from an instrumentality to the general fund alone marks the absence of intent by Congress to confer NAFI status, and the court will not construe it as such. To elevate an implication of *Core Concepts* into a rule expanding the court's jurisdiction would be to treat lightly the fact that this court is one of specific and defined jurisdiction. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428, *aff'd,* 758 F.2d 665 (Fed.Cir.1984).

The court's jurisdiction to entertain claims and to grant relief extends only so far as the United States has waived its sovereign immunity from suit. *Testan,* 424 U.S. at 399, 96 S.Ct. 948 (citing *United States v. Sherwood,* 312 U.S. 584, 591, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)); *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir.1993). The waiver of sovereign immunity must be expressed unequivocally and cannot be implied, *United States v. Mitchell,* 445 U.S. 535, 539, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), and any grant of jurisdiction to this court must be strictly construed. *Id.; Cosmic Constr. Co. v. United States,* 697 F.2d 1389, 1390 (Fed. Cir.1982). Further, the Federal Circuit has recently reiterated its determination that the Federal Reserve is a NAFI, although without any particular discussion of the payments from the Federal Reserve to the Treasury. *AINS, Inc.,* 365 F.3d at 1339–40. The court concludes, therefore, that the Federal Reserve remains a NAFI, despite the 1997 and 1998 mandated payments of net revenue to the Treasury.

The court expresses no opinion as to whether the payment of the Federal Reserve's net earnings to the Treasury requires compensation under the Fifth Amendment to the depository institutions required to maintain reserves. Absent the NAFI doctrine, it would be necessary for the court to deter-

mine whether: plaintiff has a protected property interest in the reserve account; the Federal Reserve earns interest in the meaning of *Webb's* and *Phillips* on required reserve accounts; the payment of any such interest is a taking. As it is, however, the court has no power to hear and decide those issues.

In addition to its takings claim, plaintiff asserts that "[d]efendant's actions constitute an 'illegal exaction' of property in violation of the Fifth Amendment Due Process Clause, since the Federal Reserve has, in effect, confiscated interest on required reserves ...." [8] An illegal exaction claim is one in which "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum ... improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002 (1967). The relationship between the Tucker Act and the court's jurisdiction over illegal exactions has been explained by the following:

> As recognized in *United States v. Testan,* a Tucker Act claim for damages against the United States ... may take one of two forms: a claim under a money-mandating statute or a claim for money improperly exacted or retained. A claimant must rely either on a statute that mandates payment of money from the government to the claimant or on an illegal exaction, that is, a payment to the government by the claimant that is obtained without statutory authority. The first is founded on statutory authorization; the second on the absence of statutory authorization. One is the flip side of the other.

*Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1579 (Fed.Cir.1996) (Nies, S.J., *concurring* ) (citations omitted).

In this case, plaintiff argues that the Federal Reserve's retention and payment to the Treasury of alleged interest on its required reserves is, in effect, money exacted without constitutional authority. Regardless of whether this proposition is true, the argument is unavailing. The fact that plaintiff's

claim is constitutional and not statutory, whether founded on the takings clause or a due process violation, cannot cure the court's lack of jurisdiction. It has been noted by this court that, "[t]he Fifth Amendment itself does not provide a tribunal for every suit .... Therefore, in order for this court to hear a Fifth Amendment claim, it must fit both within the Tucker Act and within the limitation placed on the Court by 28 U.S.C. § 2517, which authorizes the payment of judgments only from appropriated funds." *Lion Raisins,* 58 Fed.Cl. at 397 (citation omitted).

As this court stated in *AINS, Inc. v. United States:*

> We have thus come full circle and returned to what this case is really about: sovereign immunity. Until Congress lifts sovereign immunity and allows at least some suits against these large NAFIs, what very well could be a vested right in common circumstance cannot be vindicated in this court. "The Government of the United States has been emphatically termed a government of laws, not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a legal vested right." *Marbury v. Madison,* 1 Cranch 137, 163[, 2 L.Ed. 60] (1803).

56 Fed.Cl. 522, 544 (2003).

The court concludes, therefore, that it has no subject matter jurisdiction to consider either plaintiff's takings or illegal exaction claims.

It is acknowledged that a consequence of this judgment is that plaintiff is left without a judicial forum in which to have its claims remedied if the actions of the Federal Reserve in fact be a taking or illegal exaction. The Supreme Court has held, however, that when "the United States ... creates rights in individuals against itself," it "is under no obligation to provide a remedy through the courts." *United States v. Babcock,* 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011 (1919). "[T]hat is because there was no surrender of sovereign immunity in the plan of the [Constitutional] convention; so that, for suits

8. Plaintiff's Motion For Partial Summary Judg-    ment at 25.

against the United States, it remained 'inherent in the nature of sovereignty not to be amenable to suit of an individual without its consent.'" *Glidden v. Zdanok,* 370 U.S. 530, 563–64, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) (quoting THE FEDERALIST, No. 81, at 511 (Alexander Hamilton) (Wright ed., 1961)). This is evidenced by the fact that for nearly one hundred years after the adoption of the Constitution there was no judicial tribunal to resolve takings claims. See *Lion Raisins, Inc. v. United States,* 57 Fed.Cl. 435, 437–38 (2003). "As a result of the barrier of sovereign immunity, the laws controlling governmental rights and obligations could not for years obtain a fully definitive exposition. The creation of the Court of Claims can be viewed as a fulfillment of the design of Article III." *Glidden,* 370 U.S. at 557, 82 S.Ct. 1459. When Congress created this court, however, it did not include jurisdiction over NAFIs. It has since expanded such jurisdiction only to NAFIs enumerated in the 1970 amendment to the Tucker Act, which does not encompass the Federal Reserve. All that apparently remains to plaintiff, therefore, are legislative appeals or non-monetary claims in prayer of alternative relief as may be pursued in another forum.

### Conclusion

For the above-stated reasons, the Clerk of the Court is hereby directed to DISMISS the complaint for lack of subject matter jurisdiction. All pending motions in this case are MOOT. No costs.

IT IS SO ORDERED.